**Dean Justin McKEEVER,
Plaintiff-Appellant,**

v.

**Thomas ISRAEL and Gregory Hilt,
Defendants-Appellees.**

**No. 80–2785.**

United States Court of Appeals,
Seventh Circuit.

Argued May 4, 1982.
Decided Sept. 29, 1982.

See also, D.C., 476 F.Supp. 1370.

Cynthia Shoenberger, Law Student, Northwestern University Legal Clinic, Chicago, Ill., for plaintiff-appellant.

Steven D. Ebert, Wis. Dept. of Justice, Madison, Wis., for defendants-appellees.

Before BAUER and POSNER, Circuit Judges, and LARSON,* Senior District Judge.

LARSON, Senior District Judge.

This is an action by an indigent state prisoner under 42 U.S.C. § 1983 (1976) for alleged deprivations of constitutional rights. Plaintiff-appellant Dean Justin McKeever is an inmate at the Waupun correctional facility operated by the Wisconsin Department of Health and Social Services. Defendant-appellee Thomas Israel is the Warden at Waupun. Defendant-appellee Gregory Hilt is a correctional officer at the prison.[1] We reverse the judgment of the district court and remand for appointment of counsel and further proceedings consistent with this opinion.

In his pro se complaint filed July 10, 1978, McKeever alleged that a prison policy forbidding a prisoner from taking in excess of 12 pieces of legal or social mail when he left

the prison violated the First, Fourth, and Fourteenth Amendments to the United States Constitution and that property belonging to McKeever had been lost, destroyed, or stolen, in violation of the Fourth, Eighth, and Fourteenth Amendments. McKeever sought a declaration that the acts of the defendants had violated his constitutional rights and an injunction on his own behalf and on behalf of all other inmates to prohibit the mail and property policies. He also sought an injunction requiring the return of his property, or in the alternative, compensatory and punitive damages. Finally, McKeever sought an injunction to prohibit prison officials from retaliating against him for bringing this suit. The district court granted plaintiff leave to file his suit in forma pauperis under 28 U.S.C. § 1915(a) (1976). Because the trial court denied McKeever's motions for appointment of counsel, the plaintiff represented himself throughout the proceedings below.

The claims evolved over a long series of pretrial motions. As ultimately defined by the district court, the question for determination at trial was narrowed to "the single issue of whether the defendant Hilt, on December 1, 1977, wrongfully forced plaintiff to separate 23 letters from the ones he had taken out of the prison to a court appearance." Docket Entry [hereinafter Doc.] 49. McKeever maintains that he left the prison on November 29, 1977, for a state court hearing on the modification of his sentence with 35 character reference letters in his possession. He claims that upon his return to the prison he was forced to "separate" 23 letters, 15 of which were never returned to him.[2]

A court trial on the question of the missing letters was held on November 7, 1980. At the close of the plaintiff's case, the

---

* The Honorable Earl R. Larson, Senior Judge of the United States District Court for the District of Minnesota, is sitting by designation.

1. The original complaint named Israel and two correctional officers—Fred Zurbachen and Joseph Scheradella—as defendants. Hilt was subsequently added and Zurbachen and Scheradella were dismissed as defendants.

2. McKeever claims that in addition to being relevant to his efforts to gain modification of his sentence, the letters were also germane to his pending petition for executive clemency. He claims that he was irreparably harmed by the loss of the letters.

district court granted defendant's motion for involuntary dismissal. In granting this motion, the trial judge emphasized that plaintiff's "Complaint says one thing and his sworn testimony says another." Transcript [hereinafter Tr.] 167. In his amended complaint plaintiff stated that on December 1, 1977, Hilt had prevented McKeever from taking more than 12 letters back to his cell after the state court appearance, while at trial in the federal district court McKeever admitted that he had no contact with Hilt on December 1, 1977. The trial judge cited numerous other grounds for granting defendant's motion for involuntary dismissal, including the lack of any showing of proximate cause between the loss of the letters and McKeever's inability to gain a modification of his sentence.

McKeever filed his in forma pauperis appeal pro se,[3] and we appointed counsel to represent him before this Court.[4] The focus of the arguments on appeal has been the trial court's refusal to appoint counsel for the plaintiff. McKeever maintains that the district court erred in not recognizing its authority to appoint counsel under 28 U.S.C. § 1915(d) (1976) and hence in entirely failing to exercise its discretion. Moreover, McKeever argues that it was an abuse of discretion not to appoint counsel when plaintiff stated a meritorious claim and the other factors specified by this Court in *Maclin v. Freake,* 650 F.2d 885, 887–89 (7th Cir. 1981), were present. McKeever requests this Court to reverse the judgment of the district court and to remand with instructions for the appointment of counsel.

Defendants respond that there was no abuse of discretion because section 1915(d) merely allows the district court to "request" rather than "appoint" counsel for an indigent civil litigant. Further, defendants maintain that even if the statute provides authority to appoint counsel, the district court did not abuse its discretion under *Maclin.* Finally, defendants argue that if the district court abused its discretion in failing to recognize its power to appoint counsel under section 1915(d), the proper remedy would be to allow the district court to exercise its discretion on remand.

Beyond the appointment of counsel issue, McKeever alleges a number of additional grounds for reversal:

1. The district court erred by not exercising its discretion under 28 U.S.C. § 1915(c) (1976) to order the payment out of government funds of the fees of witnesses subpoenaed by an indigent party;[5]

2. the district court abused its discretion by not allowing plaintiff to amend or supplement his complaint with allegations contained in plaintiff's affidavit filed September 13, 1978, concerning beatings by guards, denial of necessary medicine, and other serious incidents of physical abuse in retaliation for the filing of this suit;

3. the court below erred in granting Warden Israel's motion for summary judgment on plaintiff's claim of an alleged prison policy limiting the amount of mail a prisoner could take to or back from court appearances

---

3. Because McKeever appealed from the final judgment of the district court, the present case is thus distinguished from *Randle v. Victor Welding Supply Co.,* 664 F.2d 1064, 1067 (7th Cir. 1981), where we refused an appeal from an order denying appointment of counsel.

4. We appointed Robert P. Burns of the Northwestern University Legal Clinic to represent appellant before this Court. Attorney Burns has been aided by senior law students Cynthia G. Shoenberger and Kathleen G. Kennedy. The Court wishes to thank these three individuals for their assistance.

5. The United States Court of Appeals for the Sixth Circuit has stated in dictum:

We think that it is within the sound discretion of the district court to order the payment of witness fees as well as other normal costs, out of government funds under Section 1915 where the court has made an initial determination that the litigant is without funds in its grant of in forma pauperis status, and upon the further showing that the witness is necessary for the full presentation of the litigant's case.

*Morrow v. Igleburger,* 584 F.2d 767, 772 n.7 (6th Cir. 1978), *cert. denied,* 439 U.S. 1118, 99 S.Ct. 1027, 59 L.Ed.2d 78 (1976).

when the trial judge did not provide plaintiff with the notice of the need to file a counter-affidavit in response to Israel's statement that no such policy existed; [6]

4. the district court erred in failing to grant or at least to hold an expedited hearing on plaintiff's motion for a preliminary injunction against retaliation for filing this lawsuit when plaintiff's affidavit of September 13, 1978, detailed incidents of retaliation and defendants failed to submit any counter-affidavits;

5. the enactment by Congress of the Civil Rights of Institutionalized Persons Act, § 7, 42 U.S.C. § 1997e, (Supp. IV 1980), during the pendency of this lawsuit requires vacation of the district court's order dismissing McKeever's claims for confiscation of property for failure to exhaust state administrative remedies; [7] and

6. the district court abused its discretion in awarding defendants $200 in attorney's fees plus costs when McKeever was an indigent prisoner proceeding pro se and his claim was not frivolous, unreasonable, or without foundation.

Defendants have inexcusably failed to brief any of these additional issues, asserting that McKeever's arguments for reversal are without merit and that the district court's memoranda provide adequate treatment.

■ The starting point for our analysis of the appointment of counsel issues is 28 U.S.C. § 1915 (1976):

(a) Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor by a person who makes affidavit that he is unable to pay such costs or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that he is entitled to redress.

\* \* \* \* \* \*

(d) the court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.

There should be no question that a "district court has broad discretion to appoint counsel for indigents under 28 U.S.C. § 1915(d)." Maclin, 650 F.2d at 886; see also McBride v. Soos, 594 F.2d 610, 613 (7th Cir. 1979); Heidelberg v. Hammer, 577 F.2d 429, 431 (7th Cir. 1978); Chapman v. Kleindienst, 507 F.2d 1246, 1250 & n.6 (7th Cir. 1974); Ehrlich v. Van Epps, 428 F.2d 363, 364 (7th Cir. 1970); LaClair v. United States, 374 F.2d 486, 489 & n.3 (7th Cir. 1967).

The trial court in the present case refused to appoint counsel for McKeever on at least four separate occasions. On September 13, 1978, subsequent to the alleged incidents of physical abuse, McKeever moved under 18 U.S.C. § 3006A(g) (1976) for appointment of counsel. The trial court ruled on April 30, 1979, that

[w]ith respect to plaintiff's request for appointment of counsel, the Court wishes to advise plaintiff that it has no authority to provide compensation for counsel in civil cases. Therefore, the Court declines plaintiff's request to appoint counsel in this action.

Doc. 27. McKeever renewed his request under section 3006A(g), but the district court found on October 1, 1979, that it

---

**6.** Although it is not cited by plaintiff on appeal, our recent decision in *Muhammad v. Rowe,* 638 F.2d 693, 695–96 (7th Cir. 1981), may be controlling here.

**7.** In *Jenkins v. Brewer,* 450 U.S. 904, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981), the United States Supreme Court vacated our decision in *Jenkins v. Brewer,* 624 F.2d 1106 (7th Cir. 1980), and "remanded for further consideration in light of the Civil Rights of Institutionalized Persons Act, Pub.L. 96–247, 94 Stat. 349." 450 U.S. at 904, 101 S.Ct. at 1338. We, in turn, remanded to the district court. Plaintiff argues that the property claims in *Jenkins* were similar to those in the case at bar and that the Act requires reversal of the district court's dismissal for failure to exhaust administrative remedies and remand for further proceedings.

"must again deny the plaintiff's request for appointed counsel because it has no funds to pay such counsel." Doc. 36. McKeever moved twice more under section 3006A(g), but the court ruled on October 6, 1980:

> The plaintiff has filed a motion for appointment of an attorney pursuant to 18 U.S.C. § 3006A(g). This section, however, applies only to the appointment of counsel in habeas corpus proceedings. Therefore, the Court lacks authority under this section to appoint counsel in a civil action such as this. *Furthermore, because of the lack of funding, the Court cannot appoint counsel in a civil action under 28 U.S.C. § 1915. Therefore, plaintiff's request for appointment of counsel must be and is hereby denied.*

Doc. 56 (original emphasis omitted and emphasis added). On the day of trial, McKeever made one last attempt to gain an appointed attorney, stating "that the Court did not have the right to proceed in forma pauperis without giving me due counsel." Tr. 5. The district court responded:

> I have no authority to appoint counsel for indigent parties in Civil Actions. It's a frequent problem that we encounter. We do have attorneys sometimes that will accept Civil Actions on contingent fee bases, and we do endeavor to maintain a roster of attorneys that will do that, but I have no authority to appoint.

> \*    \*    \*    \*    \*    \*

All right, let the record show that with respect to the appointment of counsel, the Court has already indicated that it can and must deny that motion. It has no authority to appoint counsel for indigent litigants in this kind of a case.

Tr. 5–7. The trial proceeded with McKeever representing himself.

The district court failed entirely to exercise its discretion under section 1915(d) because it did not recognize its authority to appoint counsel. Defendants maintain that there was no abuse of discretion because section 1915(d) merely allows a court to "request" counsel rather than to "appoint" counsel, but the vast weight of authority in this Circuit [8] and elsewhere [9] demonstrates that the power of a court to provide counsel under section 1915(d) is commonly referred to as a power to "appoint." The distinction between "requesting" and "appointing" is irrelevant in the present case where the district court was operating under the mistaken impression that it had no authority whatsoever to secure counsel for McKeever. Moreover, it should be remembered that the issue of a distinction between "appointment" of counsel and a "request" for counsel is one that defendants have raised on appeal and not one that was articulated by the trial court. It is also irrelevant that plaintiff brought his motion under section 3006A(g) rather than section 1915(d). Although the trial court was correct that it

---

**8.** In the recent case of *Maclin* and *McBride,* this Court spoke solely in terms of "appointment" of counsel and a power to "appoint." *See* 650 F.2d at 886–89; 594 F.2d at 613. Earlier cases may have employed the statutory term "request," but the interchangeability in this context of the word "appoint" is apparent from a reading of the opinions as a whole. In *Chapman* plaintiff moved for "*appointment* of counsel," and this Court directed the district court "to make the necessary *request* pursuant to 28 U.S.C. § 1915(d)." 507 F.2d at 1250 (emphasis added). In *Ehrlich* this Court stated that "[a]lthough 28 U.S.C. § 1915(d) authorizes the court to *request* an attorney to represent any person unable to employ counsel, . . . we conclude that the district court was well within its discretion in denying appellant's motion to have an attorney *appointed* to advise him." 428 F.2d at 364 (emphasis added). Likewise, in *LaClair* this Court cited section 1915(d) in con-

nection with a motion for "*appointment* of counsel." 374 F.2d at 489 & n. 3 (emphasis added). Even in *Heidelberg,* where this Court noted that "28 U.S.C. § 1915(d) merely authorizes the court to *'request'* an attorney to represent a party who is proceeding *in forma pauperis,* " we also noted that we had "*appointed* counsel" under section 1915(d) to represent the plaintiff on appeal. 577 F.2d at 430, 431 (emphasis added). In response to plaintiff's argument in that case that the district court had erred in failing to *"appoint"* counsel, this Court remanded for the district court "to consider whether counsel should be *requested* to act for the plaintiff." *Id.* (emphasis added).

**9.** *See, e.g., Ray v. Robinson,* 640 F.2d 474 (3rd Cir. 1981); *United States v. McQuade,* 579 F.2d 1180 (9th Cir. 1978); *Shields v. Jackson,* 570 F.2d 284 (8th Cir. 1978).

could not appoint counsel in a section 1983 action under this provision,[10] the court's rulings reflect a mistaken belief that it had no power at all to provide an attorney for the plaintiff. This is most apparent from the trial court's ruling of October 6, 1980, where it explicitly referred to section 1915 and said that it could not appoint an attorney under this provision due to a lack of funding.[11] The unavailability of funds to compensate an appointed attorney seems to have been the major concern of the trial court, but this has no bearing on the power of a court to provide counsel under section 1915(d). *See, e.g., Heidelberg,* 577 F.2d at 431.

■ The failure of the trial court to exercise its discretion under section 1915(d) was an abuse of discretion. *See Ray v. Robinson,* 640 F.2d 474, 478 (3rd Cir. 1981); *United States v. McQuade,* 579 F.2d 1180, 1181 (9th Cir. 1978). As the United States Court of Appeals for the Ninth Circuit said in *McQuade:*

> The refusal to appoint counsel by the court was not based upon a failure to demonstrate indigency under § 1915, nor upon an exercise of discretion that this case was inappropriate for the appointment of counsel, but rather upon the ground that the court had no authority whatsoever to appoint counsel for civil litigants.

*Id.* The *McQuade* appeals panel remanded to allow the district court to exercise its discretion,[12] but we will go further and remand with instructions to appoint counsel.

In *LaClair* this Court said "that appointment of counsel for indigents in habeas corpus and section 2255 proceedings rests in the sound discretion of district courts unless denial would result in fundamental unfairness impinging on due process rights." 374 F.2d at 489. This has become the general standard in this Circuit for reviewing refusals to appoint counsel under section 1915. *See Maclin,* 650 F.2d at 886; *Heidelberg,* 577 F.2d at 431; *Chapman,* 507 F.2d at 1246 n.6. In *Maclin* we emphasized that even though the appointment of counsel is highly discretionary, this does not mean that the district court is beyond review. We held that, under the *LaClair* due process standard, the district court had abused its discretion in refusing to appoint counsel. We reversed and remanded for appointment of counsel and further proceedings.

In reaching this conclusion we outlined a series of considerations that the district courts should take into account when ruling on section 1915(d) motions. The threshold question is whether the claim is of sufficient merit. This Court emphasized that "[e]ven where the claim is not frivolous, counsel is often unwarranted where the indigent's chances of success are extremely slim." 650 F.2d at 887. Assuming that this initial criterion is satisfied, the district court should consider a variety of other factors. We noted the considerations that had the greatest applicability to the facts of *Maclin* and which are most frequently cited by courts in support of appointment of counsel. *Id.* at 888–89. The first factor is whether the party is able adequately to investigate the factual issues in the dispute. Appointment of counsel is often warranted where the indigent is unable to conduct a suitable investigation. The second factor is whether the only evidence that will be in-

---

**10.** Section 3006A(g) provides:

> Discretionary appointments.—Any person subject to a revocation of parole, in custody as a material witness, or seeking relief under section 2241, 2254, or 2255 of title 28 or section 4245 of title 18 may be furnished representation pursuant to the plan whenever the United States magistrate or the court determines that the interests of justice so require and such person is financially unable to obtain representation. Payment for such representation may be as provided in subsections (d) and (e).

**11.** A somewhat similar situation is found in *Ray v. Robinson,* 640 F.2d 474, 477 (3rd Cir. 1981), where the United States Court of Appeals for the Third Circuit found that, in denying plaintiff's motion for appointment of counsel because section 3006A(g) does not provide funds for attorneys in civil actions, the district court mistakenly failed to recognize its authority to appoint counsel under section 1915(d).

**12.** *See also Ray,* 640 F.2d at 478; *Heidelberg,* 577 F.2d at 431.

troduced is in the form of conflicting testimony. Examination and cross examination by trained counsel should aid the factfinder in determining the truth. The third factor is whether the indigent party is capable of presenting his or her own case. If the requisite capacity is lacking, counsel should be appointed. The fourth factor is whether the law to be applied is complex or unclear. It will aid the court in the resolution of difficult legal issues if argument is presented on both sides by competent counsel. In *Maclin* we emphasized that these factors "are by no means an exclusive checklist .... In some other case other elements will no doubt be found significant—even, perhaps, controlling." *Id.* at 889.

We need not go beyond the *Maclin* factors, however, to demonstrate that it was an abuse of discretion for the district court to fail to appoint counsel for McKeever. As to the merits of McKeever's claim, it is significant that defendants moved to dismiss the action on a number of occasions but that the trial court found that there was enough merit to allow at least part of plaintiff's claims to go forward. Also, the instant case is distinguished from the two major cases cited in *Maclin* as examples of clearly nonmeritorious claims. In one case dispositive defenses were available to the defendant and in the other there was no chance of success because the controlling law was well settled. *See Maclin,* 650 F.2d at 887 (citing *Miller v. Pleasure,* 296 F.2d 283 (2d Cir. 1961), *cert. denied,* 370 U.S. 964, 82 S.Ct. 1592, 8 L.Ed.2d 830 (1962); *Ligare v. Harries,* 128 F.2d 582, 583 (7th Cir. 1942)).

In *Maclin,* this Court found that the plaintiff's confinement to a wheelchair and constant physical pain prevented him from developing his proof. The present case may have had a similar dimension in that McKeever alleged severe medical difficulties in conjunction with his initial request for appointment of counsel on September 13, 1978, and specifically cited medical problems as the basis of his August 29, 1980 motion for appointment of counsel.[13] The inability of McKeever to investigate his claim is also suggested by his apparent failure to conduct any discovery. From the record presented to this Court, it appears that he obtained no documents and conducted no depositions. The nature of the testimony of the persons McKeever called to the stand indicates that he did not even interview his own witnesses prior to trial.

In addition to helping him investigate facts, a trained attorney would have assisted McKeever in examining and cross-examining witnesses. The success of McKeever's claims about the events of November 29, 1977, through December 1, 1977, depended upon the credibility of the persons called to testify. As recognized by the trial judge, the key issue turned on the credibility of plaintiff versus the credibility of defendant Hilt. Tr. 162. It is true that McKeever ultimately impeached himself at trial on the vital point of whether he had any contact with Hilt on December 1, 1977, but at the time it considered McKeever's motions for appointment of counsel, the district court could not have foreseen how McKeever would testify. Moreover, if trained counsel had been able to present and preserve other issues for trial such as the alleged physical mistreatment of McKeever, this instance of self-impeachment would not have been decisive and the credibility of witnesses would have been all the more important.[14]

---

**13.** McKeever's motion stated:

Comes the petitioner and moves this court for leave and for good cause (ill health—am currently housed in the prison infirmary with bladder dysfunction and venous stasis & chronic lower extremity lymphedema which can cause open ulceration of the legs to occur quite rapidly if insufficient attention is paid to conservative therapy) for the appointment of legal counsel under Title 18 U.S.C. Sect. 3006A(g) for all stages of the trial in the interest of justice.

Doc. 50.

**14.** In *Manning v. Lockhart,* 623 F.2d 536, 540 (8th Cir. 1980), the United States Court of Appeals for the Eighth Circuit reversed and remanded with instructions for the appointment of counsel where plaintiff alleged that he had been beaten by a prison warden and there was a question of the credibility of the plaintiff versus that of the warden.

The record is replete with examples of damaging procedural errors by plaintiff that trained counsel would not have been likely to have made. These errors are testament to McKeever's general lack of competence to conduct the lawsuit. McKeever sought injunctive relief on behalf of himself and all other residents of the institution, but it appears that he never moved for certification of a class. His affidavit filed September 13, 1978, alleged serious incidents of physical abuse, but he never successfully converted these allegations into an amended or supplemental complaint.[15] On August 18, 1980, the trial court granted summary judgment on McKeever's claim that there was a prison policy limiting the amount of mail that prisoners could take to and from court appearances. The court's reason for this action was that McKeever had filed no affidavits to counter Warden Israel's affidavit that no such policy existed. The trial transcript shows that McKeever had little working knowledge of the rules of evidence on hearsay.

That this case involved difficult or unclear legal issues is most pointedly demonstrated by the trial court's December 13, 1978, denial of defendants' motion to dismiss the confiscation of property claim for failure to exhaust administrative remedies and subsequent grant of the motion on October 1, 1979, in light of this Court's recent decision in *Secret v. Brierton,* 584 F.2d 823 (7th Cir. 1978). On appeal, plaintiff contends that the controlling law has been changed once again by Congress' enactment of the Civil Rights of Institutionalized Persons Act, § 7, 42 U.S.C. § 1997e (Supp. IV 1980).

Defendants argue that even if it was an abuse of discretion not to appoint counsel for McKeever, the action of the trial court was harmless error in light of McKeever's admission on the stand that he had no contact with defendant Hilt on December 1, 1977, the lack of any showing that he had been irreparably harmed by the loss of the letters, and the general lack of merit to his claims. They maintain that the presence of counsel could not possibly have made any difference under these circumstances.

Plaintiff responds that the focus of the proceedings on the single question of whether Hilt separated 23 letters from McKeever on December 1, 1977, was the result of an artificial narrowing of the issues, a narrowing that would not have occurred if McKeever had been represented by counsel. He emphasizes the importance of counsel for the claims he desired to litigate but was unable to bring to trial, particularly the allegations of beatings and physical abuse.

We recognize the possibility that the failure of the district court to appoint counsel may, after all the facts are brought to the fore, prove to have been harmless or that plaintiff's claims may not be moot. We believe, however, that this can only be known after McKeever's case is fully developed and presented to the district court by a member of the bar. That a prisoner proceeding pro se is to be given the benefit of the doubt is well established in the case law. *See, e.g., Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–596, 30 L.Ed.2d 652 (1972); *Muhammad v. Rowe,* 638 F.2d 693, 695–96 (7th Cir. 1981); *Stringer v. Rowe,* 616 F.2d 993, 997 (7th Cir. 1980).

On remand and upon the motion of appointed counsel, the trial court should reconsider its rulings on amendment of the complaint, denial of the motion for preliminary injunction, summary judgment for Israel, and dismissal of the property claims. Once these and other issues are determined, the scope and continuing vitality of McKeever's claims should be clear. The trial court should also reconsider plaintiff's arguments on the issuance of subpoenas. Although we might attempt to address the merits of the trial court's earlier rulings on these issues, we decline to do so and expressly reserve judgment. Defendant has not provided us with briefing or significant

15. McKeever included the allegations in his amended complaint filed May 29, 1979, but on October 1, 1979, the trial court struck this portion of the amended complaint as being beyond the permissible scope of amendments contemplated in an earlier order of the court.

oral argument on points other than the appointment of counsel, and we are reluctant to rule on such a range of questions without the aid of complete arguments from both sides. We firmly believe that our adversary system of justice works best when both sides are zealously and competently represented. This principle has obvious implications both for the appointment of counsel for indigent prisoners at the trial level and the proper resolution of issues on appeal.

We reverse the judgment of the district court and remand for appointment of counsel and proceedings consistent with this opinion. Because the award of attorneys' fees was premised upon the dismissal in favor of the defendants below, this award will be vacated.

Defendants shall bear the costs of this appeal.

POSNER, Circuit Judge, dissenting.

The court in this prisoners' rights case reverses the judgment dismissing the complaint and remands the case for (1) appointment of counsel for the plaintiff (McKeever, the prisoner) and (2) reconsideration of the other issues that McKeever raises in this appeal. To my regret, I am unable to concur in either part of the decision.

The basis of (2) is, in the court's words, that the "defendants have inexcusably failed to brief" any issues other than that of appointment of counsel. I agree that the defendants' neglect was unhelpful, both to this court and, as it turns out, to the defendants' own interests; that there was no good excuse for their neglect; and hence that some sanction would be appropriate. I could understand therefore if this court declared the defendants in default on the issues they failed to brief, or, more mercifully, ordered the defendants to file a supplemental brief dealing with those issues on pain of being declared in default on them if they refused to do so. But what purpose is served by remanding the issues to the district judge for him to reconsider them, I do not understand. We know his views; and while it is possible that his mind may be

changed when McKeever's appointed counsel reargues the issues to him, this is unlikely and makes it foreseeable that we will have to decide those issues on a subsequent appeal in this case. It would make more sense simply to ask the defendants for a supplemental brief, and of course give McKeever (who is represented by counsel in this court) an opportunity to reply to it.

The more important issue raised by this appeal is appointment of counsel for McKeever. However dubious—bizarre, even—it might seem as an original matter to allow lawfully imprisoned convicts to spend their time bringing damage suits against their jailers, so that instead of reflecting on the wrongs they have done to society our convicts—exchanging as it were contrition for indignation—prosecute an endless series of mostly imaginary grievances against society, this branch of federal jurisdiction is too well established for me to question it and I do not, but merely record in passing my amazement that it has been allowed to grow to its present extent. (In fiscal year 1981, almost 16,000 suits under section 1983 were brought by state prisoners.) Neither do I question that 28 U.S.C. § 1915(d) empowers the district court in a prisoner's civil rights case to "request" a lawyer—whatever exactly that means (on which see the recent discussion in *Caruth v. Pinkney*, 683 F.2d 1044, 1048–49 (7th Cir. 1982))—to represent an indigent plaintiff without hope of fee beyond what the lawyer can expect under 42 U.S.C. § 1988 in the event that the plaintiff prevails in the suit, which these plaintiffs rarely do. I also do not question that the district judge in the present case, mistakenly believing that section 1915(d) comes into play only when Congress appropriates funds to compensate appointed (or "requested") counsel, committed error by failing to exercise his discretion under this statute.

But the question is again what to do. We have a choice of (1) remanding the case for the district court to exercise its discretion; (2) declaring the error harmless; or (3) concluding that the case for giving McKeever counsel is so overwhelming that it would be

an abuse of discretion if the district court did not request counsel for him, and therefore directing the district court to do so. The panel majority chooses (3). This choice, I respectfully suggest, does not take seriously the difference between an exercise of discretion and the review of that exercise under an abuse of discretion standard, the standard applicable to decisions whether to appoint counsel under section 1915(d). *Maclin v. Freake,* 650 F.2d 885, 886 (7th Cir. 1981) (per curiam). Only in a very clear case would we be warranted in acting in a matter committed to the discretion of the district court without getting the district judge's views; and unless we are prepared to adopt a presumption that a prisoner in a civil rights case is entitled to have counsel appointed for him, the facts here do not make the outcome of the district court's exercise of its discretion foreordained. This seems rather a routine prisoners' rights case: a scatter shot of implausible charges. McKeever's main charge—unauthorized removal of a number of letters from his possession—is straightforward; if the district court could not properly have refused to appoint counsel in this case, when could it properly do so?

I question the use of events at trial to show that McKeever was entitled to counsel. The issue is not whether McKeever botched his trial and should have another, this time with a lawyer, but whether on the basis of the facts as they appeared when McKeever requested appointment of counsel the district judge could not in the proper exercise of his discretion have refused to grant the request. The events at trial are relevant, but on the distinct issue of harmless error, where they provide ground for affirmance rather than reversal. The trial revealed that McKeever was a liar. In his complaint he had sworn that defendant Hilt was the person who had taken his letters; at trial he testified that Hilt was nowhere about when the incident occurred. If it is clear that McKeever ought to lose his case on the merits, the failure to appoint counsel for him, in a civil case where there is no constitutional right to counsel, *Randall v. Wyrick,* 642 F.2d 304, 307 n.6 (8th Cir.

1981), was a harmless error—one might even say a happy error.

The strongest argument for appointing counsel for McKeever relates not to the issue that was tried (whether Hilt took McKeever's letters) but to McKeever's efforts to broaden the scope of the suit to allege that the defendants had beaten him up. He lied about the letters but it does not follow that he must have lied about the beatings too. The district court may have hamstrung McKeever's efforts to amend his complaint to include the beatings—maybe he really did need a lawyer to help him figure out Rule 15 of the Federal Rules of Civil Procedure. But the error, if there was any, was again harmless, though for a different reason. The alleged beatings state a different cause of action from the alleged conversion of the letters. Therefore the judgment against McKeever in the present case, if upheld by this court, would not be res judicata with regard to the beatings and so would not prevent McKeever from filing a new complaint based on them.

My disagreement with the panel's resolution of the appointment of counsel issue is independent of whether the approach to dealing with such issues set forth in *Maclin v. Freake, supra,* 650 F.2d at 887–89, and followed in the panel's opinion, is correct; but I will not try to conceal my unhappiness with that approach. *Maclin* holds that in deciding whether to appoint counsel for a prisoner in a civil case the district court should take into account the probable merit of the claim, whether there are difficult factual or legal issues, and the competence of the prisoner to represent himself. But this omits the most important consideration of all—the ability of a prisoner to secure retained as distinct from appointed (or "requested") counsel in a meritorious case. Where damages are sought, the prisoner should have no difficulty finding a lawyer willing to take his case on a contingent-fee basis, provided the case has some merit. Even if only injunctive relief is sought, he should be able to retain counsel to assist him with a claim having substantial merit, because 42 U.S.C. § 1988 allows the court to

award the winning party in a civil rights case a reasonable attorney's fee, and the award is made as a matter of course when the plaintiff is the winner. See, e.g., *Bond v. Stanton,* 630 F.2d 1231 (7th Cir. 1980).

Encouraging the use of retained counsel thus provides a market test of the merits of the prisoner's claim. If it is a meritorious claim there will be money in it for a lawyer; if it is not it ought not to be forced on some hapless unpaid lawyer. In contrast, the appointment of counsel is a source of endless conflict between prisoners and lawyers. The following pattern has become commonplace: after reviewing the case, the lawyer who has been appointed to represent the prisoner advises the court that the case has no merit, and asks leave to withdraw; and the prisoner then accuses that lawyer (who after all was not his personal choice) of incompetence and bad faith and requests the appointment of another. The cycle begins again, and very often the prisoner ends up proceeding *pro se.*

Thus, unlike the panel that decided *Maclin,* I believe there should be a presumption against appointing counsel in a prisoner's civil rights suit. See *Allison v. Wilson,* 277 F.Supp. 271, 273 (N.D.Cal.1967); *Owens v. Swift Agricultural & Chem. Corp.,* 477 F.Supp. 91, 93 (E.D.Va.), aff'd without opinion, 612 F.2d 1309 (4th Cir. 1979). But even if I thought the approach of *Maclin* correct I could not agree that we have disposed of the present case correctly; and I am concerned that the panel's decision—both the outcome and some language in the opinion that could be read to suggest that this panel regards *Maclin* not merely as rejecting any presumption against appointment of counsel but as creating a presumption in favor of appointment ("We firmly believe that our adversary system of justice works best when both sides are zealously and competently represented. This principle has obvious implications ... for the appointment of counsel for indigent prisoners at the trial level ...")—may be interpreted by the district courts of this circuit as another step on the road toward making appointment of counsel in prisoners' civil rights cases routine. That is not a destination I should like

to reach. There are not enough lawyers in America to satisfy prisoners' demands for free legal counsel; those demands are insatiable. But more ominous than the extra burdens on the legal profession, judges, and prison administrators if every prisoner is given the assistance of a lawyer in prosecuting his civil claims are the implications for the perceived legitimacy of criminal punishment if no sooner are the gates slammed shut on the convicted criminal defendant than the tables are turned and the prosecuted—with appointed counsel at his side—becomes the prosecutor.

Perhaps this apocalypse is already upon us. Our criminal prosecutions are becoming—to use an ugly but apt word—multiphasic. The familiar first phase comprises the criminal trial itself and any direct appeal from it. After the conviction has been affirmed, the phase of postconviction proceedings begins—first the state postconviction proceedings (I am speaking of state prosecutions, since the present case involves a state prisoner), then federal habeas corpus and maybe, after the sentence has been served, coram nobis as well. The third phase will meanwhile be getting under way. It consists of the section 1983 lawsuits, often numerous, complaining about mistreatment or neglect by prison officials and employees. When the prisoner is released from jail or has exhausted his imagination in devising section 1983 claims, the fourth phase begins, consisting of lawsuits against the prisoner's lawyers and the judges in the earlier phases complaining that by failing to secure his civil rights they violated those rights. When all this futile litigation has finally ended, the criminal is conscious not of the wrong he did but of his own multitudinous claims to justice whose vindication an unjust legal system kept always just outside his reach. He emerges not chastened, but full of passionate resentment.

By enlarging the prisoner's right to counsel the decision today, I respectfully suggest, moves us closer to the time when the pattern sketched above will become the norm in our criminal justice system.