**Leon IRBY, Plaintiff,**

v.

**Harvey D. WINANS and Charles R. Michaels, Defendants.**

No. 80–C–665.

United States District Court, E.D. Wisconsin.

Feb. 26, 1985.

Leon Irby, pro se.

John R. Sweeney, Asst. Atty. Gen., Madison, Wis., for defendants.

## DECISION AND ORDER

WARREN, District Judge.

## BACKGROUND

This action was initiated nearly five years ago, on July 25, 1980, when the plaintiff, presently incarcerated at the Waupun Correctional Institution at Waupun, Wisconsin, filed his pro se complaint pursuant to 42 U.S.C. § 1983, seeking injunctive and declaratory relief and monetary damages for alleged violations of his civil rights. The plaintiff's principal charges are that the defendants, all employees of the State of Wisconsin assigned to the institution, interfered with his 1974 criminal trial for the second degree murder of a fellow inmate by harassing him, falsifying his presentence report, tampering with evidence, and interfering with communications between him and his attorney. The specific events and circumstances upon which this lawsuit is premised are recounted in some detail in the Court's *Order* of July 21, 1982.

By its *Memorandum And Order* of August 4, 1980, the Court considered the several allegations in the plaintiff's pro se complaint and granted him leave to prosecute his claims *in forma pauperis*, pursuant to 28 U.S.C. § 1915(a), as to defendants Harvey D. Winans, Charles R. Michaels, and Henry J. Laub. On October 21, 1980, defendant Michaels filed his answer to the complaint, denying all substantive allegations therein and asserting several affirmative defenses—among them, that he is immune from liability under 42 U.S.C. § 1983, that at all times during the course of events giving rise to this action he has acted in good faith, and that the plaintiff has both failed to exhaust his state administrative and judicial remedies and failed to state a claim upon which relief may be granted in this forum.

Ten days later, on October 31, 1980, defendant Winans answered the charges in the plaintiff's complaint, likewise denying all substantive allegations and raising several affirmative defenses. It appears from the record in this case that although the United States Marshal attempted to serve defendant Laub with the summons and complaint in this action, the State of Wisconsin advised that this defendant has not been one of its employees since 1979. Accordingly, defendant Laub has never been made a proper party defendant to this lawsuit, as reflected in the Court's captioning of this case to incorporate the names of defendants Winans and Michaels alone.

In early November of 1980, the parties initiated their discovery and almost immediately became embroiled in what was to be the first of numerous disputes as to the propriety of their respective requests and the nature and scope of the compliance required pursuant to the Federal Rules of Civil Procedure. In the midst of these initial skirmishes, the plaintiff, on November 24, 1980, filed a motion for appointment of counsel to represent him in the prosecution of his claims. Although the Court, by its *Order* of December 15, 1980, denied that request on the basis that it had no authority to compensate attorneys appoint-

ed in civil actions, it did indicate that it had already referred this matter to an attorney to determine if he or she would be willing to try the case on a contingent fee basis.

Indeed, on December 12, 1980, the Court had sent to a lawyer practicing in this district—one who had previously indicated an interest in representing indigent civil litigants—a letter of solicitation, the relevant portion of which follows:

... [Y]our name [has been provided] to me as an attorney who would be willing to accept an appointment to represent an indigent plaintiff in a case brought pursuant to 42 U.S.C. § 1983....

To that end, I request that you review the above-mentioned file. If you conclude that there is merit to the plaintiff's contentions, you may then get in touch with the plaintiff and attempt to arrive at an arrangement with him regarding fees and representation. The file is available for your inspection at my chambers.

If after reviewing this file and communicating with the plaintiff, you determine that you do not wish to undertake this assignment, please notify me at your earliest convenience.

On December 15, 1980, that attorney advised the Court by phone, and subsequently confirmed by his letter of December 18, 1980, that although he had carefully examined the case file, his own civil docket prevented him from accepting an appointment; as he concluded, "[t]his case would require intensive and lengthy research and interviews, and I do not feel with good conscience, that I could spend the appropriate time needed to adequately pursue the rights of the plaintiff in this case."

The next day, December 16, 1980, the Court sent a second letter of solicitation to another local attorney with an interest in representing indigent parties. On December 27, 1980, the Court received from that lawyer a letter likewise declining the Court's invitation to undertake the prosecution of the plaintiff's case. On January 6, 1981, in yet another attempt to secure representation for the plaintiff, the Court sent a letter to a third local attorney, asking that he review the case file and consider prosecuting this action. On January 21, 1981, counsel responded to the Court's request in this fashion:

... I have had an opportunity to examine the file in this case. This is to inform you that I will not be representing Mr. Irby with regard to these proceedings. I have recently been involved in several lawsuits involving events taking place at the Wisconsin State Prison. These cases have been extremely time consuming and at present I am unable to undertake additional cases of this nature.

Thus unsuccessful in its three initial attempts to secure an attorney for the plaintiff, the Court allowed the parties to continue with discovery; unfortunately, their efforts at cooperation in this undertaking continued to prove unsuccessful, prompting both to file cross-motions to compel. Those petitions were resolved by the Court's *Memorandum And Order* of October 13, 1981, in which the Court also established a briefing schedule on the defendants' proposed motion for summary judgment.

That motion, along with a supporting brief, was filed on February 16, 1982, but not before the plaintiff had interposed two more petitions for the production of documents in this case. Moreover, within one month of the defendants' Rule 56(b) motion, plaintiff filed yet another motion to compel discovery, premised principally on an earlier request that he be granted an additional thirty days in which to compile affidavits and submit documentary evidence in opposition to the pending summary judgment petition.

By its *Order* of July 21, 1982, the Court denied the defendants' motion for summary judgment, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, but ordered stricken paragraphs 14, 23, and 25 of the plaintiff's complaint. In addition, the Court ordered the defendants to respond forthwith to the plaintiff's discovery motion of March 15, 1982. Five days later, on July 26, 1982, the plaintiff filed what the Court construed as a motion for reconsider-

ation of its decision, insofar as it struck the above-noted paragraphs of the plaintiff's complaint. During the following ten weeks, the plaintiff filed additional requests to compel discovery of the defendants in this action.

Finally, in its *Decision And Order* of March 31, 1983, the Court addressed that portion of the plaintiff's motion of July 26, 1982, by which he requested appointment of counsel to represent him in the prosecution of his claims. As a threshold matter, the Court observed that, in the two-year period since its unsuccessful attempts at securing counsel for the plaintiff, the Court of Appeals for the Seventh Circuit had identified in 28 U.S.C. § 1915(d) the discretionary authority of the trial courts to appoint counsel for indigent litigants. *See infra* at 488, *McKeever v. Israel*, 689 F.2d 1315 (7th Cir.1982); *Maclin v. Freake*, 650 F.2d 885 (7th Cir.1981). Recording its inclination to agree with the view expressed by the dissenting judge in *McKeever*, 689 F.2d at 1323, this Court nonetheless analyzed the circumstances and factual foundation of the present case in the context of the five touchstones for the appointment of counsel, as established by the *McKeever* majority. In the end, the Court determined, for the reasons set forth in its *Decision And Order* of March 31, 1983, that counsel should be appointed to represent the interests of the plaintiff in this matter. Consistent with this ruling, the Court denied the plaintiff's motion for reconsideration of its *Order* of July 21, 1982, "without prejudice to any similar motions which his appointed counsel may wish to file." *Decision And Order* at 4 (March 31, 1983).

On that same day, the Court sent to a local attorney with an interest in representing indigent civil litigants the following letter:

> From time to time, the Court is required to appoint counsel to represent indigent civil rights plaintiffs pursuant to 28 U.S.C. § 1915(d). *See e.g., McKeever v. Israel*, 689 F.2d 1315 (7th Cir.1982). Although the Court cannot ensure that counsel will be compensated for services, there always exists the possibility of an award of attorney's fees pursuant to 42 U.S.C. § 1988 for the prevailing party. For the most part, however, these appointments in these types of cases seek the *pro bono* services of counsel.
>
> In regard to the above-captioned case, the Court is requesting that you represent the indigent plaintiff. The file is available for inspection in the Court's chambers, Room 364, Federal Building. If, after reviewing the file you determine that you are unable to represent the plaintiff, please notify the Court promptly.
>
> The Court appreciates your willingness to consider this request.

Approximately one week later, on April 8, 1983, counsel advised the Court by letter that, since he was previously involved with a state court prosecution of the plaintiff several years ago, it would be inappropriate for him to undertake the prosecution of this case.

During the summer of 1983, as the Court continued with informal efforts to make an appointment in this matter, counsel for the defendants acceded to the plaintiff's request to suspend all further discovery until a court-appointed attorney was named. On September 19, 1983, the Court contacted again the attorney it had initially solicited in December of 1980, requesting that he reconsider taking this assignment. As before, however, counsel notified the Court, this time by his letter of September 20, 1983, that his trial calendar would effectively prevent him from devoting a sufficient amount of time to the adequate development and presentation of the plaintiff's case.

One day later, on September 21, 1983, the Court sent a sixth formal letter of solicitation to yet another local attorney, requesting that he consider accepting the Court's appointment. Approximately one week later, however, that lawyer likewise advised that his own docket prevented him from undertaking the role as plaintiff's legal representative.

Pursuant to the Court's subsequent request, made on October 24, 1983, still another attorney reviewed the case file and undertook some preliminary investigation with respect to the merits of the plaintiff's principal claims. Although interested in the case, counsel subsequently notified the Court that he would not be able to accept an appointment, principally because of the geographic distance between his office in the Milwaukee area and the Waupun Correctional Institution, where principal discovery would likely take place.

Finally, in the wake of additional informal, yet unsuccessful, efforts to appoint counsel in this matter, the Court sent its letter of solicitation to an assistant state public defender, requesting that he consider representing the plaintiff in this matter or recommending another attorney, perhaps in the Waupun area, who might be willing to do so. While counsel did undertake some preliminary investigation of the plaintiff's cause of action, he has recently advised that he, too, is not in a position to assist the Court in making an appointment to represent the indigent plaintiff in this matter.

Having thus been unsuccessful in nine attempts with eight different attorneys to secure counsel for the plaintiff, the Court, for the reasons stated herein, declines to pursue further efforts toward this end and instead schedules this matter for further proceedings, aimed at bringing this already long-delayed action to some final disposition.

## SECTION 1915(d) AND PLAINTIFF'S REQUEST FOR COURT–APPOINTED COUNSEL

■ There is little doubt that there is no constitutional right to appointed counsel in a civil case. *Caruth v. Pinkney,* 683 F.2d 1044, 1048 (7th Cir.1982); *Ehrlich v. Van Epps,* 428 F.2d 363, 364 (7th Cir.1970). Nonetheless, as the Court has already noted, trial judges are empowered by statute to appoint counsel when the circumstances justify it; section 1915(d) of Title 28 of the United States Code specifically authorizes the Court to request an attorney to represent a party in a civil action who is proceeding in forma pauperis. 28 U.S.C. § 1915(d).

■ In general, the Court has broad discretion to appoint counsel for indigents under 28 U.S.C. § 1915(d), *McKeever v. Israel,* 689 F.2d 1315, 1318 (7th Cir.1982); *Maclin v. Freake,* 650 F.2d 885, 886 (7th Cir. 1981), and its denial of counsel will not be overturned unless it would result in fundamental unfairness impinging on due process rights. *LaClair v. United States,* 374 F.2d 486, 489 (7th Cir.1967); *Heidelberg v. Hammer,* 577 F.2d 429, 431 (7th Cir.1978). However, discretionary choices are not left to the Court's inclination but to its judgment, and its judgment is to be guided by sound legal principles. *Caruth v. Pinkney,* 683 F.2d 1044, 1048 (7th Cir.1982); *Ekanem v. Health & Hospital Corporation of Marion County,* 589 F.2d 316, 319 (7th Cir.1978).

■ It is within this context that the Court of Appeals, as already indicated, has fashioned standards for the exercise of discretion in considering whether court-appointed counsel for indigent civil litigants is appropriate. These five non-exclusive factors are:

1. whether the merits of the indigent's claim are colorable;
2. the ability of the indigent plaintiff to investigate crucial facts;
3. whether the nature of the evidence indicates that the truth will more likely be exposed where both sides are represented by counsel;
4. the capability of the indigent litigant to present the case; and
5. the complexity of the legal issues raised by the complaint.

*Merritt v. Faulkner,* 697 F.2d 761, 764 (7th Cir.1983); *Maclin v. Freake,* 650 F.2d 885, 887–889 (7th Cir.1981). As the parties to this action recognize, these touchstones formed the basis for the Court's *Decision And Order* of March 31, 1983.

While the district court is obliged to consider each of these factors in determining whether the appointment of counsel is ap-

propriate under the circumstances, it is well-established that

> [f]oremost among the "certain factors" that an appointing court must consider is an analysis of the merits of the indigent litigant's claim from both a factual and legal standpoint. *Maclin [v. Freake ]* makes clear that a court need not appoint counsel when it considers the indigent's chances of success to be extremely slim....
>
> When justifying a decision to appoint, a district court must apply the *Maclin* standards to the facts of each case and *if* counsel is both warranted and available, the court should *request* representation.... As noted, of primary importance in an indigent's request for counsel is an evaluation of the factual and legal merits of the claim and its chances for success.

*Caruth v. Pinkney,* 683 F.2d 1044, 1048, 1049–1050 (7th Cir.1982) (emphasis original).

Although the complaint filed by plaintiff in the present case arguably states a claim under 42 U.S.C. § 1983, *see* Court's *Memorandum And Order* of August 4, 1980, it is now apparent to those members of the state bar who have investigated plaintiff's allegations more closely that the merits of his case are tenuous, at best, and that any limited benefits that might accrue from an attorney's prosecution of this cause of action would likely be far outweighed by huge expenditures of time and money devoted to a case with a highly uncertain result. Indeed, independent inquiry by numerous attorneys interested in precisely this sort of litigation has apparently produced little, if any, basis upon which such an expenditure of prosecutorial resources might be justified.

■■■ To be sure, the standard to be applied in the context of § 1915(d) requests is not whether the bar feels that the litigant's chances of success in prosecuting his or her claims are poor, but whether the merits of the indigent's complaint are, in fact, colorable. At the same time, it is settled that under § 1915(d), the district court "has the authority only to *request* an attorney to represent an indigent, not to require him to do so." *Caruth v. Pinkney,* 683 F.2d 1044, 1049 (7th Cir.1982) (emphasis original). Beyond this, the Court is under no affirmative duty to investigate a litigant's allegations on its own initiative, even if that litigant is indigent and unschooled in the practice of law.

■■■ Moreover, the Seventh Circuit has made clear that the primary purpose of appointing counsel in an appropriate case is to "insure[ ] that the *meritorious* claims of a pro se plaintiff are not defeated...." *Stringer v. Rowe,* 616 F.2d 993, 1001 (7th Cir.1980) (emphasis supplied). Where, as here, there is reason to believe that plaintiff's case may be something less than meritorious, the Court opines that further attempts to secure prosecutorial counsel would only meet with failure and result in the purposeless suspension of proceedings in this action.

Accordingly, while the Court regrets that it has been unsuccessful in meeting plaintiff's request for appointed counsel, it feels obliged to ensure that the prosecution of this case proceeds with regularity to safeguard the interests of all parties involved and to resolve their disputes with reasonable dispatch. To this end, the Court will make no further attempts to secure counsel to represent plaintiff in this matter.

Instead, the Court now INSTRUCTS the parties to proceed apace with discovery in this matter; in particular, counsel for the defendants shall be permitted to depose the plaintiff, pursuant to Rule 27 of the Federal Rules of Civil Procedure, as soon as arrangements for that deposition might reasonably be made.

In addition, the Court hereby ORDERS both parties to file and serve status letters stating explicitly the nature and scope of the discovery they have yet to complete; an estimated date by which all discovery in this matter will be concluded; the chances, if any, for the pretrial settlement of this action; and a date by which this case might be readied for trial. The parties are also

490

invited to incorporate in their letters, which should be submitted no later than *Friday, March 15, 1985*, any additional information or insight with respect to the prosecution and defense of this case that might warrant the Court's attention.

Following its receipt of the parties' letters, the Court will conduct a pretrial conference at *1:30 p.m., on Wednesday, March 20, 1985*, to set final discovery deadlines, to discuss settlement prospects, if any, and to schedule the matter for further proceedings, including trial, if appropriate. Counsel for the defendants should be present at that hearing, as should the plaintiff, whose appearance will be made possible by the Court's execution of a writ prior to the hearing date.

If, in the interim between today's order and the hearing of March 20, 1985, the parties encounter additional discovery problems, they are hereby DIRECTED to file appropriate motions to compel discovery, pursuant to Rule 37(a) of the Federal Rules of Civil Procedure and Local Rule 6.02, which the Court will resolve at the pretrial conference.