**Edward Joseph X. CHAPMAN,**
**Plaintiff-Appellant,**

v.

**Richard KLEINDIENST et al.,**
**Defendants-Appellees.**

No. 74–1218.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 20, 1974.

Decided Dec. 16, 1974.

Diane Crawford Geraghty, Northwestern Legal Assistance, Chicago, Ill., for plaintiff-appellant.

Henry A. Schwarz, U. S. Atty., William C. Evers, III, Asst. U. S. Atty., East St. Louis, Ill., for defendants-appellees.

Before HASTINGS, Senior Circuit Judge, and STEVENS and SPRECHER, Circuit Judges.

PER CURIAM.

Edward Joseph X. Chapman, a prisoner at Marion Federal Penitentiary, brought this *pro se* civil rights action against various federal prison officials[1] as a result of his extended confinement in punitive segregation at the institution. Chapman alleged that his placement in segregation for his refusal to handle pork, motivated by his observance of what he contends is a basic tenet of his Black Muslim religion, during kitchen clean-up duties violated his First Amendment free exercise rights. He further claimed that he was denied procedural due process at the hearing that preceded his segregation and that the resulting segregation for nine months constituted cruel and unusual punishment. Chapman sought, in substance, a mandatory injunction ordering his return to the general prison population, an injunction restraining defendants from interfering with his religious freedom, actual and punitive damages, a declaratory judgment, and a writ of mandamus.[2]

---

1. Attorney General Richard G. Kleindienst; Norman A. Carlson, Director of the Federal Bureau of Prisons; George W. Pickett, Charles Fenton, and Captain Earl Buzzard, Marion officials; and Frederick Siber, Director of Chaplaincy Services, Federal Bureau of Prisons.

2. In addition, if it is found that Chapman was wrongfully placed in segregation, expurgation of the record of this punishment would seem

Chapman's request for the appointment of counsel was denied by District Judge Foreman at the commencement of the one-day hearing held on October 9, 1973. Chapman called two witnesses, James Tippy, a Marion caseworker, and James Culley, who had served on the Adjustment Committee that ordered Chapman placed in segregation. At the close of Culley's testimony, Judge Foreman recessed the case and indicated that he would hear no more testimony. When Chapman protested that he wished to call another witness, Keith X. Ferres, to testify as to the tenets of the Muslim faith, Judge Foreman indicated that Chapman·could submit an affidavit instead, but that he, Judge Foreman, would determine whether additional testimony would be necessary.

On December 17, 1973, the district court entered judgment for the defendants, holding Chapman's claim for a mandatory injunction moot because he had been released from segregation on July 23, 1973. The court further concluded that Chapman had failed to prove any of the allegations of his complaint.

On this appeal, Chapman, who is now represented by counsel, argues that the district court erred in the following respects: 1) even though Chapman had been released from segregation, his claim for injunctive relief was not thereby mooted; 2) the district judge abused his

discretion in not appointing trial counsel for Chapman; 3) the district court improperly terminated the case prior to the close of Chapman's presentation; 4) Chapman had in fact made out a prima facie case on each of the three alleged constitutional violations; and 5) several evidentiary rulings were erroneous. For the following reasons, we reverse and remand for a new trial.

I.

Insofar as the ruling that Chapman's release from segregation rendered his claim for a mandatory injunction ordering release moot is concerned, the trial judge was clearly correct. We do not read his order as holding that Chapman's release mooted his claims for monetary, declaratory, or prohibitory injunctive relief.[3] The release could not have had those effects; the recovery of damages for the alleged violations of his constitutional rights does not turn on his continued presence in segregation.[4] Nor would his release render moot his request for a declaratory judgment that the acts of these prison officials were unconstitutional, for an injunction prohibiting further such actions, and for further appropriate relief, including the expurgation of his prison record. As long as Chapman remains at Marion, and as long as he may again be required to handle pork, or may again go before the

---

appropriate to protect Chapman from future prejudice in obtaining parole, work assignments, and the transfer to a prison nearer his home. Chapman included in his complaint a general prayer for all appropriate relief. It is axiomatic that *pro se* prison complaints will be held to a less stringent standard than pleadings drafted by lawyers. *See* Haines v. Kerner, 404 U.S. 519, 520–521, 92 S.Ct. 594, 30 L.Ed.2d 652; Bryant v. Harris, 465 F.2d 365, 366 (7th Cir. 1972).

3. The defendants suggest opaquely that Judge Foreman's mootness determination applied to the entire request for injunctive relief. Appellees' Brief at 5.

4. Defendants have argued here that Chapman may not maintain his damage action because of the doctrine of "official immunity." Judge Foreman did not rule on this defense below; it is unclear that it was presented to him, although the defendants did cryptically state in their answer that "Inmates of federal peni-

tentiaries are not entitled to monetary damages for violation of their First Amendment rights, if such a violation occurred." In any event, the defense of official immunity, because it is not an absolute bar to damage recoveries, requires a full hearing and concomitant findings of fact by the trial judge. On remand, which we order *infra*, the defendants may argue that the circumstances in which damages may be recovered against federal officials for official acts first enunciated in Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434, and further developed in our decisions in Scherer v. Brennan, 379 F.2d 609 (7th Cir. 1967), cert. denied, 389 U.S. 1021, 88 S.Ct. 592, 19 L.Ed.2d 666; Skolnick v. Campbell, 398 F.2d 23 (7th Cir. 1968); and Scherer v. Morrow, 401 F.2d 204 (7th Cir. 1968), cert. denied, 393 U.S. 1084, 89 S.Ct. 868, 21 L.Ed.2d 777, have not been demonstrated by Chapman.

Adjustment Committee, the possibility of the reoccurrence of these issues satisfies the "actual controversy" requirement of the Declaratory Judgments Act, 28 U.S.C. § 2201, and the "case or controversy" requirement of Article III.[5]

In addition, Chapman's complaint was drafted as a class action, brought on behalf of all Black Muslims at Marion, some of whom, he alleges, are in segregation as a result of the same First Amendment violations of which Chapman complains. Judge Foreman failed to conduct the investigation and make the findings of the appropriateness of the class action required by Fed.R.Civ.P. 23(c). If Chapman's contentions of a uniform institutional policy applying to all Black Muslims are correct, this is another compelling reason for finding that the case is not moot and deciding these questions at this time. *See* Workman v. Mitchell, 502 F.2d 1201, 1207–1208 (9th Cir. 1974).

### II.

Chapman next argues that the trial judge abused his discretion in not granting Chapman's motion for appointment of counsel, once it became clear that he had a reasonable chance of succeeding in this action. Without determining whether Judge Foreman abused his discretion in this case, we have concluded that on remand it would be appropriate for Chapman to have the assistance of coun-

sel. A staff attorney of the Northwestern Legal Assistance Clinic, which represented Chapman before us, has indicated both the willingness and the financial capacity to continue this representation. Since she has already demonstrated her competence and familiarity with the record, we direct the trial judge to make the necessary request pursuant to 28 U.S.C. § 1915(d).[6]

### III.

After Chapman had completed his examination of his first two witnesses, the trial judge stated:

"The Court will continue this matter generally at this time. I'll take the matter under advisement with regard to the evidence that is presented and with regard to the other matters that are to be submitted to me and I'll make a ruling as to whether or not, in my opinion, additional evidence is needed. I do not have any more time available for this matter at this time." Tr. 71.

Chapman was permitted to submit the affidavit of Keith X. Ferres, his expert on the Black Muslim religion, but was never subsequently allowed to call any more witnesses.

Termination of the proceedings in this manner was improper since Chapman had not finished presenting his case. Judge Foreman's ultimate ruling that Chapman had not proved the allegations

5. The federal courts have concluded that prisoner complaints were not moot under similar circumstances in West v. Cunningham, 456 F.2d 1264, 1265–1266 (4th Cir. 1972); Barnett v. Rodgers, 133 U.S.App.D.C. 296, 410 F.2d 995, 997 n. 1 (1969); Jackson v. Bishop, 404 F.2d 571, 575–576 n. 5 (8th Cir. 1968) (Blackmun, J.); and Pierce v. LaVallee, 293 F.2d 233, 234 (2d Cir. 1961).

6. We have previously held that the decision whether to request counsel to represent an indigent in a civil case, as authorized by 28 U.S.C. § 1915(d), "rests in the sound discretion of district courts unless denial would result in fundamental unfairness impinging on due process rights." LaClair v. United States, 374 F.2d 486, 489 (7th Cir. 1967). *See also* Ehrlich v. Van Epps, 428 F.2d 363, 364 (7th Cir. 1970). Chapman would have us

adopt the standard set forth in Dreyer v. Jalet, 349 F.Supp. 452, 486 (S.D.Tex.1972), aff'd mem., 479 F.2d 1044 (5th Cir. 1973):

"[I]f a civil action brought by an indigent acting pro se, including prison inmates, has merit requiring an evidentiary hearing, then counsel should be appointed to properly present the claim."

*See* Peterson v. Nadler, 452 F.2d 754, 757–758 (8th Cir. 1971); Chubbs v. City of New York, 324 F.Supp. 1183, 1191 (E.D.N.Y.1971); *cf.* United States v. Simpson, 141 U.S.App. D.C. 8, 436 F.2d 162, 167–170 (1970). These cases discuss the highly complex institutional and financial considerations posed in a request for counsel by the indigent civil litigant. We need not, however, decide this important question in this case.

of his complaint was not consistent with the implicit understanding that, should he decide additional evidence was necessary, he would permit Chapman to continue with the presentation of his case.

The defendants make much of the fact that Chapman stated that he had only one more witness, Keith X. Ferres, that Ferres was to testify only as to the tenets of the Muslim faith, and that there was no dispute over this issue. Judge Foreman decided to terminate the proceedings, however, *before* Chapman made this statement. *See* Tr. at 71. In truth, Chapman may have desired to call several additional witnesses, including himself, to the stand, but concluded that, in light of the judge's statement, he could hope that Judge Foreman would hear at least one more witness.

In addition, Chapman indicated that he might wish to call other witnesses for "rebuttal" testimony. Tr. at 74. While an attorney would refer to testimony as "rebuttal" only if it were to be presented after the defendants' case, Chapman may have meant simply additional witnesses. Judge Foreman so interpreted this reference; he stated:

> "If you desire to submit to the Court an affidavit of the other witnesses or witness—Mr. Ferres, that was here today, you may do so." Tr. at 74.

Thus, we cannot be certain that, but for Judge Foreman's premature termination of Chapman's presentation, the plaintiff would not have introduced the evidence that Judge Foreman concluded was lacking to prove the allegations of the complaint.[7]

While we sympathize with the trial judge's desire to have this case tried speedily, since we also are conscious of the number of prisoner cases on his docket, nevertheless the procedure used in this case is unacceptable. The fact that the trial judge had not scheduled additional time for this matter is plainly not a sufficient justification for aborting the trial before the plaintiff had completed his case.

## IV.

Chapman contends that even on this truncated record Judge Foreman erred in concluding that he had not proved the allegations of his complaint.

With respect to Chapman's claim that he was punished for his observance of a basic tenet of his Black Muslim faith, we agree that he presented substantial evidence of interference with First Amendment rights and that judgment should not have been entered prior to hearing the defendant's evidence.

The defendants, in their brief, acknowledge that Chapman introduced proof that "(1) his religion forbids touching pork; (2) he was called upon to handle pork; (3) he was placed in segregation for refusing to obey an order by a supervisor, and that order was to handle pork. . . . " Appellees' Brief at 19.[8] Having established this interference with his First Amendment right, and having tendered additional evidence by an expert in the Muslim religion, Chapman was entitled to have the defendants come forth with their explanation of the reasons for the requirement that he han-

---

7. Our ruling herein does not in any way interfere with the sound discretion of a trial judge to limit the number of witnesses that may appear to present essentially cumulative evidence. *See* Loux v. United States, 389 F.2d 911, 917 (9th Cir. 1968), cert. denied, 393 U.S. 867, 89 S.Ct. 151, 21 L.Ed.2d 135. Such was clearly not the basis of Judge Foreman's actions.

8. There is some evidence in the record that Chapman's segregation may have resulted in part from a threat made to the prison officer who ordered him to handle pork. Chapman admits saying that " 'Allah (God) might might come to his defense and blow (Mr. Brown)

him through an oven' as he allegedly did a previous prison oppressor of plaintiff." Complaint Paragraph 16(d). The Incident Report filed by Brown, however, stated the charge as "Failing to perform work as instructed by a supervisor," a violation of Code No. 303. Judge Foreman, in entering judgment for defendants, made no finding that the threat was the real reason for the segregation, instead of the refusal to handle pork. In its present incomplete posture, the record strongly indicates that Chapman was punished at least in part for his refusal to clean off the food carts.

dle pork. It was error for Judge Foreman to enter judgment for defendants on this issue. *See* Walker v. Blackwell, 411 F.2d 23, 25 (5th Cir. 1969); Barnett v. Rodgers, 133 U.S.App.D.C. 296, 410 F.2d 995, 1000 (1969); Cooper v. Pate, 382 F.2d 518, 521 (7th Cir. 1967).

■ We do not agree with Chapman, however, that Judge Foreman erred in granting judgment for the defendants on his procedural due process claim. Chapman contends that he was not afforded the procedural protections we described in United States ex rel. Miller v. Twomey, 479 F.2d 701 (7th Cir. 1973), cert. denied, Gutierrez v. Department of Public Safety, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102. Although his segregation hearing was held on October 11, 1972, prior to our decision in *Miller*, he argues that we should apply that decision retroactively. In both Adams v. Carlson, 488 F.2d 619, 624–629 (7th Cir. 1973), and Thomas v. Pate, 493 F.2d 151, 161 n. 6 (7th Cir. 1974), we did so apply the *Miller* standards. The Supreme Court, however, granted *certiorari* in *Thomas*, vacated the judgment, and remanded the case for a reconsideration of the retroactivity issue in light of its decision in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *see* Cannon v. Thomas, —— U.S. ——, 95 S.Ct. 288, 42 L.Ed.2d 39 (1974). In *Wolff*, the Supreme Court stated that due process requirements in prison disciplinary proceedings are not to be applied retroactively. 94 S.Ct. at 2983. Thus, we may not apply the *Miller* standards in Chapman's case.

■ Instead, the procedures used in Chapman's segregation hearing must be judged against the due process standards in force at that time, the standards set forth in Adams v. Pate, 445 F.2d 105 (7th Cir. 1971). In *Adams* we stated that procedural due process was complied with when "the prisoner is confronted with the accusation against him and afforded a reasonable opportunity to deny the accusation or explain his actions." 445 F.2d at 108. Chapman's segregation was ordered only after compli-

ance with these procedures. Thus, Chapman's claim for damages and for the expurgation of his records on this basis was properly denied. As there is no evidence that Marion officials are not complying with *Miller* at this time, the entry of a prohibitory injunction would have been improper.

■ Chapman finally contends that Judge Foreman erred in entering judgment for the defendants on Chapman's claim that his nine-month segregation was in violation of the Eight Amendment prohibition of cruel and unusual punishment. The essence of his claim is that a nine-month segregation period was disproportionate to the offense he allegedly committed, even assuming that prison officials could properly punish his refusal to handle pork.

In Adams v. Carlson, 488 F.2d 619 (7th Cir. 1973), we recognized that "punishment which is disproportionate to the offense committed constitutes cruel and unusual punishment . . . ." 488 F.2d at 635–636. *See also* Haines v. Kerner, 492 F.2d 937, 942 (7th Cir. 1974). But, we noted that such a determination in the individual case must turn of necessity on an assessment of all the facts and circumstances surrounding the segregation decision, including such matters as the disciplinary offense involved, the prisoner's disciplinary record, and the offense for which the prisoner was originally sentenced.

It is precisely these facts that are missing from the record of this case. We do not know whether the threat Chapman admits making influenced the segregation length. We know nothing of any prior disciplinary problems or of any of the myriad factors that may have been and could properly be considered in setting the segregation term. The trial judge made no findings of fact and, as noted in Part III, *supra*, Chapman was prevented from completely presenting his case. For these reasons, although we express no opinion on the merits of the Eighth Amendment contention, Chapman is not foreclosed from pursuing this claim on remand. Of course, if Chap-

man should be successful in demonstrating that the sole reason for his segregation was his refusal to obey an order that violated his First Amendment rights, there would be no occasion to reach the Eight Amendment claim. For in that event the punishment would be entirely impermissible and no question of disproportionality would remain.

V.

In summary, we hold that Judge Foreman erred in truncating Chapman's presentation of his case, and that the facts in the record made out a prima facie case of a First Amendment violation. On remand, Chapman may pursue both his religious freedom violation and his cruel and unusual punishment claims.[9]

We note that, although Chapman's complaint contained what must be construed as a demand for a jury trial on the legal issues presented,[10] Judge Foreman conducted the October 9, 1973, hearing without a jury. While we agree that burying the jury demand in the complaint is not the best practice,[11] the court and its staff have a special responsibility to scrutinize carefully *pro se* complaints for just such infirmities. If Judge Foreman was aware of the jury demand but decided to hear the case himself first because of the prayer for injunctive in addition to damage relief, he clearly erred. The Supreme Court decisions in Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 510–511, 79 S.Ct. 948, 3 L.Ed.2d 988, and Dairy Queen, Inc. v. Wood, 369 U.S. 469, 472–473, 82 S.Ct. 894, 8 L.Ed.2d 44, require the presentation of the legal claims to the jury prior to any factual resolution by the trial judge on the equitable claims. The fact that Chapman also sought a declaratory judgment does not affect this requirement.[12]

It is more likely, however, that Judge Foreman was simply unaware of the jury demand; Chapman raised no objection when the hearing was held without a jury. Normally, the failure to object under such circumstances would constitute a waiver of the right to a jury trial. *See* National Family Insurance Company v. Exchange National Bank of Chicago, 474 F.2d 237, 241 (7th Cir. 1973), cert. denied, 414 U.S. 825, 94 S.Ct. 129, 38 L.Ed.2d 59; Smith v. Cushman Motor Works, 178 F.2d 953, 954 (8th Cir. 1950). Here, however, Chapman, who was not represented by counsel, may not have been aware of his right to object to a hearing to the court. Thus, on remand, Chapman should be allowed a jury trial unless one is formally waived pursuant to Fed.R.Civ.P. 39(a).

The judgment is accordingly vacated and the case is remanded for further proceedings.

---

9. Because of our disposition of his other contentions, it is unnecessary for us to consider Chapman's allegations concerning the trial judge's evidentiary rulings.

10. *See* Complaint Paragraph 34(b)(7).

11. *See* 5 J. Moore, Federal Practice ¶ 38.40, at 328.1–328.2 (2d ed. 1974).

12. Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 504–505, 79 S.Ct 948, 3 L.Ed.2d 988.