In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1558

Michael A. Newell,

Petitioner-Appellant,

v.

Craig Hanks,

Respondent-Appellee.

Appeal from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. TH 97-127-C-M/F--Larry J. McKinney, Chief Judge.

Argued February 14, 2002--Decided March 12, 2002


   Before Flaum, Chief Judge, and Bauer and
Evans, Circuit Judges.

   Flaum, Chief Judge.  On April 24, 1997,
Michael Newell filed a petition for writ
of habeas corpus under 28 U.S.C. sec.
2254. The district court dismissed the
petition as untimely, or alternatively
for lack of merit, and Newell appeals. We
vacate the judgment and remand the case
for further proceedings.

I.  Background

   In 1990 Newell was convicted in the
Superior Court of Knox County, Indiana,
of dealing cocaine, Ind. Code sec. 35-48-
4-1, and was sentenced to 30 years'
imprisonment. The evidence at trial had
showed that an individual named Fred
Wells, driving one of Newell's vehicles,
met police officer Richard McGee and
confidential informant Brad Foote at a
Quickstop gas station in Vincennes,
Indiana, where he sold McGee a bag of
cocaine for $950. McGee testified that
when he asked whether the substance was
"Newell's stuff," Wells replied, "Yea, I
just came from there."

   The sale had been preceded by the
following telephone conversation between
Newell ("Mike") and Foote ("Brad"),
recorded and corroborated at trial by
police officer Dennis Holt:

MIKE: Hello.

BRAD: Mike?

MIKE: Yes.

BRAD: Hey, how's it going?

MIKE: Okay.

BRAD: I'm sorry to take so long, but I'm back with you.

MIKE: Uh huh.

BRAD: So, can ah . . . can you take off and meet me at the, ah, out by the Executive or something?

MIKE: What about the place . . . ah, being Bobe's?

BRAD: Well, we can go over there, but like I said I'm here right now.

MIKE: Well, he doesn't want to go there, he wants to go to Bobe's.

[MIKE]: Yeah, and . . . ah, are you going to be by yourself, you know, he's kind of paranoid, you got to understand why.

BRAD: Yeah, I can understand that.

MIKE: But it's all together, everything, right . . . is everything right on your end?

BRAD: Yeah, yeah.

MIKE: For sure?

BRAD: For sure.

MIKE: Okay, how about Quickstop in twenty minutes?

BRAD: Quickstop in twenty minutes?
MIKE: Yeah.

BRAD: Okay, what kind of car do you . . . is he coming up in?

MIKE: Ah, probably my red pickup truck.

BRAD: The one with the back window out?

MIKE: Yeah, either that or the other one.

BRAD: Okay, I'll recog . . . I'll

recognize that, I just want to make sure it's somebody I know cause I just hate standing around, hanging around.

MIKE: It's Freddy. Okay, I'll see ya.

BRAD: Okay, it's be all right, bye.

The audiotape and transcript of this conversation, together with the testimony of officers McGee and Holt, were apparently the only pieces of evidence linking Newell to the charged transaction. Neither Wells nor Foote testified at Newell's trial.

On April 24, 1997, Newell (through his attorney) filed his first sec. 2254 petition, in which he principally alleges that the state violated Brady v. Maryland, 373 U.S. 83 (1963), by concealing pretrial communications that took place between prosecutor Lee Hoefling and Wells. To support his claim, Newell presented the transcript of a deposition taken from Wells on May 30, 1996, during which Wells testified that, before Newell's trial date, Wells met with prosecutor Hoefling and officers Holt and McGee and told them that the cocaine he sold McGee did not belong to Newell but instead to an individual named Doug Jackson. Wells further testified in his deposition that he told Hoefling that he would not testify against Newell. Hoefling then allegedly proposed the following deal: if Wells took the stand at Newell's trial and refused to testify on Fifth Amendment grounds, Wells would receive only six years for the cocaine charge pending against him. Wells accepted this agreement, which was communicated to him by his lawyer, and invoked his Fifth Amendment rights, first at a pretrial deposition scheduled by Newell's trial attorney and then again at Newell's trial. He later received a six-year sentence, but not for the drug charge./1 Wells stated in his deposition that, had he testified at trial, he would have denied having told McGee that the cocaine was Newell's.

According to Newell's petition, prosecutor Hoefling failed to disclose any of the above information, not even in response to discovery requests that would have required its production. Newell's petition further claims that Hoefling affirmatively concealed the existence of

Wells's cooperation agreement, going so far as to "cause[ ] the records of the Knox Superior Court Division 1 to reflect the State's objection to Wells's Motion for Bond Reduction (which was granted) when, in fact, the State had affirmatively agreed to his release on the date of his cooperation." Moreover, Newell claims, Hoefling told the jury during his opening statement that he had subpoenaed Wells but could not predict whether he would testify, and argued that the out-of-court statement submitted through McGee's testimony was not hearsay because Wells was under subpoena, "there by implying that he believed Wells would testify and be subject to cross-examination." Newell also alleges that Hoefling pointed out in his closing argument that Newell did not challenge Wells's out-of-court statement "despite the fact that Wells himself had not testified and that, by virtue of the State's actions, Mr. Newell was deprived of his opportunity to challenge that statement by cross-examination."

Newell's petition raises a second Brady argument: that Hoefling concealed evidence of the state's agreement with Foote "governing his activities as a confidential informant." Newell elaborated on this claim in additional pleadings before the district court, alleging that Foote's absence at trial was in part the result of the state's assistance and that the state had the ability to locate Foote at all times. Hoefling, however, allegedly told the jury during his opening statement that an individual named David Schlomer had threatened Foote, and later elicited testimony to the effect that Schlomer was a friend of Newell's. Newell contends that the implication of Hoefling's state ments was that Newell "had participated in the transmission of threats to Brad Foote and, thereby, contributed to his absence at trial." But, according to Newell, "[a]t the time he gave his Opening Statement, [Hoefling] had no basis for asserting that Foote had been threatened by anyone including Mr. Schlomer and, in fact, no such threats were made."

On December 31, 1997, the district court, at Newell's request, dismissed his petition without prejudice on the ground that he had presented a "'mixed' petition

in the sense that some of his habeas claims have been exhausted in the Indiana courts, while other claims are now being litigated in the Indiana courts through a successive petition for post-conviction relief." (More precisely, Newell had pending a motion for leave to file a successive state post-conviction petition.) Judgment was entered on January 5, 1998.

On September 8, 1998, the Indiana appeals court denied Newell's motion for leave to file a successive post-conviction petition, stating that "having examined the Petitioner's Petition for Successive Post-Conviction Relief [the court] finds that the Petition conclusively shows that the Petitioner is entitled to no relief." Over two months later, on November 20, Newell returned to federal court and moved to "redocket his Petition for Writ of Habeas Corpus, amending said Petition only insofar as the Petition contains references to the procedural status and disposition of his Petition for Successive Post Conviction Relief before the Indiana Court of Appeals." On November 25 the district court granted the motion and ordered that the "judgment entered on the clerk's docket on January 5, 1998, is vacated and the clerk shall reopen the action on the docket."

After further proceedings, however, the district court determined that Newell's amended petition was untimely and accordingly dismissed the case with prejudice. The court first reasoned that Newell's original filing on April 24, 1997, missed the cutoff date of the Antiterrorism and Effective Death Penalty Act ("AEDPA") by one day. Alternatively, the court held that, even if Newell's original petition was timely, his amended one was not because it could not "relate back" to the earlier filing date. The court also purported to reach the merits of the case and held that irrespective of untimeliness Newell was not entitled to relief because "the decisions of the Indiana Court of Appeals--and principally its decision affirming the trial court's denial of Newell's [first] petition for post-conviction relief . . . reasonably applies the law and principles applicable to Newell's claims as established by the Supreme Court of the United States." In January 2001 this court granted a

certificate of appealability on three issues: (1) whether AEDPA's one-year grace period ended on April 23 or April 24, 1997; (2) whether the district court erred in dismissing Newell's original petition and whether his amended petition relates back to the earlier filing date; and (3) whether Newell's constitutional rights were violated by the prosecutor's misconduct.

## II.  Discussion

### A. Timeliness

AEDPA imposes a one-year statute of limitations on habeas corpus petitions brought by state prisoners, 28 U.S.C. sec. 2244(d), but for prisoners whose convictions became final prior to AEDPA's enactment on April 24, 1996, there was a one-year grace period in which to file. Lindh v. Murphy, 96 F.3d 856, 866 (7th Cir. 1996), rev'd on other grounds, 521 U.S. 320 (1997). In holding that Newell's original filing on April 24, 1997, was untimely, the district court relied on the following language from Lindh, 96 F.3d at 866: "[W]e do not doubt that the [Supreme] Court would give a plaintiff who files after the enactment [of AEDPA] a reasonable post-amendment time to get litigation underway. . . . [R]eliance interests lead us to conclude that no collateral attack filed by April 23, 1997, may be dismissed under sec. 2244(d)." Later cases in this and other circuits have also assumed, where the date was not critical, that April 23, 1997, was the end of AEDPA's one-year grace period. E.g., Jones v. Bertrand, 171 F.3d 499, 500 (7th Cir. 1999); O'Connor v. United States, 133 F.3d 548, 550 (7th Cir. 1998); Guenther v. Holt, 173 F.3d 1328, 1331 (11th Cir. 1999); Brown v. Angelone, 150 F.3d 370, 375 (4th Cir. 1998); Burns v. Morton, 134 F.3d 109, 111-12 (3d Cir. 1998); Calderon v. U.S. Dist. Court for the Cent. Dist. of Cal., 128 F.3d 1283, 1287 (9th Cir. 1997), overruled on other grounds by 163 F.3d 530 (9th Cir. 1998); United States v. Simmonds, 111 F.3d 737, 746 (10th Cir. 1997).

Notwithstanding Lindh, however, whether AEDPA's grace period ended on April 23 or April 24, 1997, is still an open question in this circuit. As we observed in United States v. Marcello, 212 F.3d 1005, 1009

(7th Cir. 2000), the issue in Lindh (as well as in cases from our sister circuits proposing April 23, 1997, as the cutoff date) was "not whether the deadline should be April 23, 1997, or April 24, 1997, but rather whether prisoners whose judgments of conviction had been finalized well before the new law's date of enactment should be allowed to seek collateral relief at all. None of these cases discussed the rationale for setting April 23 instead of April 24 as the deadline." Our statement in Lindh that the grace period ended on April 23, 1997, was therefore dictum and does not control our decision today.

The general rule for computing time limitations in federal courts is Federal Rule of Civil Procedure 6(a), which excludes from the computation "the day of the act, event, or default from which the designated period of time begins to run." In Marcello we applied this rule to AEDPA--specifically, to sec. 2255 para. 6(1), which provides that the one-year limitations period for federal prisoners will run in some cases from the date on which the judgment of conviction became final--and held that, for defendants who try unsuccessfully to take their case to the Supreme Court, the one-year time limit begins to run the day after the Court denies certiorari, thereby giving defendants until the close of business on the "anniversary date" of the denial to file their habeas motion. Marcello, 212 F.3d at 1009-10; accord Bronaugh v. Ohio, 235 F.3d 280, 284-85 (6th Cir. 2000). We have applied Rule 6(a) to calculate other statutory time limits, e.g., Tribue v. United States, 826 F.2d 633, 634-35 (7th Cir. 1987) (Federal Tort Claims Act); Pearson v. Furnco Constr. Co., 563 F.2d 815, 818-19 (7th Cir. 1977) (Title VII), and in Marcello we hinted that it should determine AEDPA's cutoff date as well. Marcello, 212 F.3d at 1009. We now expressly hold what was implied in Marcello: Rule 6(a) applies to the computation of AEDPA's grace period, and so any habeas corpus petition filed on or before April 24, 1997, is timely. This step will bring us in line with every other circuit that has directly addressed the applicability of Rule 6(a) in this context. Patterson v. Stewart, 251 F.3d 1243, 1245-46 (9th Cir. 2001); Hernandez v. Caldwell, 225 F.3d 435, 438-39 (4th Cir. 2000); Gould v. Jackson, No. 98-

1743, 2000 WL 303002, at *1 (6th Cir. Mar. 14, 2000) (precedential under Sixth Circuit Rule 28(g)); Rogers v. United States, 180 F.3d 349, 355 & n.13 (1st Cir. 1999); Moore v. United States, 173 F.3d 1131, 1133-35 (8th Cir. 1999); Flanagan v. Johnson, 154 F.3d 196, 200-02 (5th Cir. 1998); Mickens v. United States, 148 F.3d 145, 148 (2d Cir. 1998); see also United States v. Cicero, 214 F.3d 199, 202 (D.C. Cir. 2000) (adopting April 24, 1997, as cutoff date without expressly discussing application of Rule 6(a)); Towns v. United States, 190 F.3d 468, 469 (6th Cir. 1999) (same).

But this does not end the timeliness inquiry. Anticipating that reasonable jurists might differ as to whether AEDPA's cutoff date was April 23 or April 24, the district court went on to hold that, even if Newell's original petition was timely, his amended petition filed on November 25, 1998, was not. The district court seemed to proceed along the follow ing analysis: (1) assuming the original petition was timely, its filing tolled the statute of limitations from the filing date (April 24, 1997) to the dismissal date (December 31, 1997); (2) the statute was running again from the dismissal date to the filing date of the amended petition (November 25, 1998); (3) Newell's motion for leave to file a successive post-conviction petition was not a "properly filed" application within the meaning of sec. 2244(d)(2), see Tinker v. Hanks, 172 F.3d 990 (7th Cir. 1999), vacated by 531 U.S. 987 (2000), reinstated by 255 F.3d 444 (7th Cir. 2001); (4) Newell's amended sec. 2254 petition therefore did not "relate back" to the date of the original filing because to hold otherwise would "permit a person in Newell's position to circumvent the reasoning of Tinker"; and (5) even if Newell's original petition were deemed to have been stayed rather than dismissed, his "rearrival" in the case more than sixty days after the state court denied his motion for leave to file a successive petition was impermissible.

There are several problems with this analysis. First, the district court mistakenly assumes that the filing of a case stops the running of the statute of limitations even if that case is later dismissed without prejudice. Elmore v. Henderson, 227 F.3d 1009, 1011 (7th Cir.

2000) (if a case is dismissed without prejudice, the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by the filing of that case). The district court's analysis also incorrectly employs "relation back" principles rather than tolling principles. The court proceeds along the assumption that Newell's original petition was dismissed, but if that is the case, the "relation back" doctrine simply does not apply. Neverson v. Bissonnette, 261 F.3d 120, 126 (1st Cir. 2001) ("relation back" doctrine inapplicable where dismissal of initial habeas corpus petition left nothing for the new petition to relate back to); see also Marsh v. Soares, 223 F.3d 1217, 1219-20 (10th Cir. 2000) (collecting cases). Rather, if Newell's first petition was dismissed, the court should have utilized tolling principles, as discussed generally in Tinker, 174 F.3d at 990-91.

But these errors are of little import. The crucial flaw in the decision is the district court's not recalling that, in its November 25, 1998 order, it already had vacated the judgment dismissing Newell's original petition and allowed the amended petition to be redocketed under the same cause number. And though the state argued at oral argument that the district court abused its discretion in vacating its earlier dismissal, we conclude that the court's decision was entirely proper. When dismissing Newell's first petition, the district court did not have the benefit of our decisions in Freeman v. Page, 208 F.3d 572, 577 (7th Cir. 2000), and Tinker, 172 F.3d at 991, which suggest that the federal action should have been stayed, not dismissed, while the Indiana court ruled on Newell's pending motion. See also Neverson, 261 F.3d at 126 n.3; Zarvela v. Artuz, 254 F.3d 374, 380 (2d Cir. 2001); Post v. Gilmore, 111 F.3d 556, 557-58 (7th Cir. 1997). By vacating the dismissal, the district court effectively converted it into a stay; this could not have been an abuse of discretion because we now know that staying the action was the right step to take in the first place.

Because Newell's initial filing was, in effect, never dismissed, the tolling principles discussed in Tinker are

inapplicable. Rather, we are left with a much simplified situation: Newell filed his original petition on April 24, 1997, and with leave of the district court amended that petition on November 25, 1998. The only question then is whether the amended petition (which supersedes the first, Kelley v. Crosfield Catalysts, 135 F.3d 1202, 1204-05 (7th Cir. 1998)) "relates back" to the initial filing date. See Fed. R. Civ. P. 15(c).

Rule 15(c) permits relation back where the claims in an amended pleading are based on the same core of facts advanced in the original. Bularz v. Prudential Ins. Co. of Am., 93 F.3d 372, 379 (7th Cir. 1996). Here, Newell's amended petition is substantively identical to his first--the only change reflecting the disposition of his state-court motion-- and therefore falls within the scope of the rule. See BCS Fin. Corp. v. United States, 118 F.3d 522, 524 (7th Cir. 1997) (amendments that merely correct technical deficiencies in earlier pleading meet the Rule 15(c) test and will relate back); 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure sec. 1497 (2d ed. 1990) (same). Granted, we have not yet decided whether Rule 15(c) applies to post-AEDPA habeas corpus proceedings. We see no reason, however, why it should not apply. Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with these rules, may be applied, when appropriate, to petitions filed under these rules." The sec. 2254 rules do not consider whether an amended petition can relate back to the filing date of the original; Rule 15(c) of the civil-procedure rules therefore governs. See Johnson v. United States, 196 F.3d 802, 805 (7th Cir. 1999) (because the Rules Governing Section 2255 Proceedings do not address amendments to motions for collateral review, Federal Rule of Civil Procedure 15(a) applies); Smith v. Gilmore, 111 F.3d 55, 56 (7th Cir. 1997) (Federal Rule of Civil Procedure 11 applies to sec. 2254 cases because nothing in the Rules Governing Section 2254 Cases precludes its application). Indeed, every other circuit that has addressed whether Rule 15(c) should be applied to post-AEDPA habeas corpus proceedings has answered in the

affirmative. Woodward v. Williams, 263 F.3d 1135, 1142 (10th Cir. 2001); Fama v. Comm'r of Corr. Serv., 235 F.3d 804, 814-16 (2d Cir. 2000); Anthony v. Cambra, 236 F.3d 568, 576-78 (9th Cir. 2000); United States v. Thomas, 221 F.3d 430, 435-36 (3d Cir. 2000); Mederos v. United States, 218 F.3d 1252, 1253-54 (11th Cir. 2000); United States v. Pittman, 209 F.3d 314, 316-17 (4th Cir. 2000); United States v. Craycraft, 167 F.3d 451, 457 & n.6 (8th Cir. 1999).

B.  Procedural Default

   Newell's petition is timely, but the state maintains that, even so, dismissal was proper because Newell procedurally defaulted his claims. It is true that Newell did not present his claims on direct appeal or in his first state post-conviction proceeding; he did, however, present them during his second post-conviction proceeding. According to Newell the parties litigated his second petition "through [Newell's] portion of an evidentiary hearing," before realizing that he had failed to comply with Indiana Post-Conviction Rule 1(12), which requires leave from the Indiana Court of Appeals before filing a successive collateral attack. Newell accordingly moved for leave in December 1996, but the appeals court declined to authorize filing, stating that "having examined the Petitioner's Petition for Successive Post-Conviction Relief [the court] finds that the Petition conclusively shows that the Petitioner is entitled to no relief." See Indiana Post-Conviction Rule 1(12)(b) ("If the pleadings conclusively show that the petitioner is entitled to no relief, the court will decline to authorize the filing of the [successive] petition.").

   The state argues that the Indiana appeals court's statement that Newell's successive petition "conclusively shows that the Petitioner is entitled to no relief" was an "adequate and independent state ground" that bars Newell from raising his claims on federal habeas corpus review. But even if Newell procedurally defaulted his claims, he could undoubtedly show "cause" for the default if he has evidence to support his underlying allegations. See Crivens v. Roth, 172 F.3d 991, 995 (7th Cir. 1999) ("We will not penalize [petitioners] for presenting an issue to us that [they] were unable to

present to the state courts because of the state's misconduct."). And in any event, we conclude that there was no procedural default because the Indiana Court of Appeals' order does not "clearly and expressly" rely on a state procedural bar as the basis of its ruling. Harris v. Reed, 489 U.S. 255, 263 (1989); Braun v. Powell, 227 F.3d 908, 912 (7th Cir. 2000); Jenkins v. Nelson, 157 F.3d 485, 491 (7th Cir. 1998). Although the Harris presumption applies only "when it fairly appears that [the] state court judgment rested primarily on federal law or was interwoven with federal law," Coleman v. Thompson, 501 U.S. 722, 739 (1991), we find that that is the situation here. Given Newell's allegations that the state concealed evidence necessary to his claims, it does not "fairly appear" to us that the Indiana appellate court's decision was based on a procedural bar. See Indiana Post-Conviction Rule 1(8) (any ground for relief not raised in original post-conviction petition is waived and may not be the basis for a subsequent petition "unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original petition"). Indeed, before realizing that Newell had failed to request leave to file his successive petition, the Indiana trial court had allowed that petition to proceed to an evidentiary hearing, suggesting that at least one state court did not view Newell's claims to be procedurally barred./2 Because we therefore have "good reason to question whether there is an independent and adequate state ground for the decision," Coleman, 501 U.S. at 739, the Harris presumption applies, and procedural default does not bar federal review of Newell's claims. See Fama, 235 F.3d at 810-11 (state court's reliance on local law was not clear from decision stating that defendant's claims were "either unpreserved for appellate review or without merit"); Jones v. Stinson, 229 F.3d 112, 118 (2d Cir. 2000) (no default where, although state court set forth factual predicate for finding waiver, it did not clearly state its intention to rely upon that ground); Wilkinson v. Cowan, 231 F.3d 347, 352 (7th Cir. 2000) (by stating that it was affirming dismissal of post-conviction petition "after careful review," state court rendered merits judgment as to each claim

raised in that petition even if it did not identify or discuss individual claims); Thomas v. Davis, 192 F.3d 445, 453-54 (4th Cir. 1999) (no default where there was no indication of how state court disposed of claim other than its general announcement that the judgment below had been "reversed"); Kappos v. Hanks, 54 F.3d 365, 370 (7th Cir. 1995) (no default where state court discussed waiver principles but then proceeded to address merits).

## C. Merits

In a last-ditch effort, the state argues that, even if Newell's claims are timely and are not defaulted, they are otherwise without merit. Specifically, the state contends that

Even if the State had entered into . . . agreements with Wells and Foote, neither Wells nor Foote testified at trial. Newell fails to point to any Supreme Court case to support his assertion that the state's agreement with person [sic] who does not testify at trial is material evidence. Such evidence would be relevant only to show Wells's and Foote's bias. Because neither testified, their credibility was not at issue, and it cannot be said that such evidence was material to Newell's guilt.

This argument is circular. In essence the state contends that it can deny a defendant the benefit of favorable witness testimony and later use the absence of that testimony as the reason why there was no constitutional violation.

The district court also believed that Newell was not entitled to relief on the merits, specifically because "the decisions of the Indiana Court of Appeals--and principally its decision affirming the trial court's denial of Newell's [first] petition for post-conviction relief . . . reasonably applies the law and principles applicable to Newell's claims as established by the Supreme Court of the United States." But whether the Indiana Court of Appeals was correct to affirm the denial of Newell's first post-conviction petition is not relevant--it was not until his second post-conviction proceeding that Newell raised the claims he raises here.

Contrary to the state's assertions, Newell has at least two colorable Brady arguments: that the state failed to disclose Wells's pretrial statements exonerating Newell and failed to disclose evidence of Wells's cooperation agreement. The state's case depended almost entirely on officer McGee's testimony that Wells told him that he got the cocaine from Newell. Had Wells testified that he did not make that statement and that the cocaine was not even Newell's, the state would have been left with only the phone conversation to link Newell to the charged transaction (assuming Wells would have been found credible). Thus, if Newell can prove his allegations, we believe that he might also be able to show a reasonable probability that the result of his trial would have been different if the suppressed evidence had been disclosed, which makes that evidence material for Brady purposes. See Giglio v. United States, 405 U.S. 150, 154-55 (1972) (evidence of government's cooperation agreement with witness was material under Brady where government's case depended almost entirely on that witness's testimony); Crivens, 172 F.3d at 996-99 (state violated Brady by failing to provide criminal records of witness whose testimony formed "heart" of state's case); Chavis v. North Carolina, 637 F.2d 213, 223 (4th Cir. 1980) (state violated Brady by failing to disclose pretrial statement of key state witness that contained crucial impeachment material).

Newell may also be able to establish a due process claim based on state interference with defense access (sometimes couched as a Sixth Amendment right to compulsory process). It is well-settled that substantial government interference with a defense witness's free and unhampered choice to testify violates the defendant's due process rights. E.g., United States v. Vavages, 151 F.3d 1185, 1191 (9th Cir. 1998) (prosecutor threatened to withdraw witness's plea agreement in her own unrelated criminal prosecution if she testified in support of defendant's alibi); Freeman v. Georgia, 599 F.2d 65, 69 (5th Cir. 1979) (police detective concealed whereabouts of witness); Lockett v. Blackburn, 571 F.2d 309, 314 (5th Cir. 1978) (prosecutor sent

witnesses out of state before trial); United States v. Morrison, 535 F.2d 223, 225-28 (3d Cir. 1976) (prosecutor repeatedly warned and intimidated prospective defense witness about possibility of perjury charges if she testified falsely); see also Webb v. Texas, 409 U.S. 95 (1972) (state trial judge intimidated sole defense witness about possibility of perjury charges). Here, by offering to dismiss the cocaine charge pending against Wells if he did not testify in Newell's defense, the prosecutor effectively hampered Wells's free choice to testify at trial and thereby infringed Newell's right to have Wells give evidence in his favor. And Wells's absence at trial might have been material to the defense for the same reasons discussed above in the Brady analysis.

Newell's allegations regarding Foote present a harder case. Potentially, Newell could have a viable claim under Webb and its supporting cases: that the state violated his due process rights by deliberately concealing Foote's whereabouts and sending him out of the state before trial. But Newell has failed to show how Foote's absence at trial prejudiced him in any way. That failure, however, could be due to the fact that the district court's conclusion regarding timeliness prevented Newell from developing the factual bases of his claims.

In such circumstances the appropriate step is to remand the case for further proceedings (including an evidentiary hearing, if necessary) so that the district court can determine the merits of Newell's claims in the first instance. See Rice v. Bowen, 264 F.3d 698, 702 (7th Cir. 2001) ("Because the district court's conclusion with respect to timeliness had the effect of cutting off further development of the record and issues there . . . the proper step is to remand the case to that court for further proceedings."); see also Lockett, 571 F.2d at 314 (finding due process violation where state made witnesses unavailable to testify and remanding for district court to determine whether their unavailability was prejudicial to defendant). We note that sec. 2254(e)(2), which circumscribes a federal court's ability to hold an evidentiary hearing if

the petitioner has "failed" to develop the factual record in state court, does not apply here because Newell's claims went undeveloped through no fault of his own. Williams v. Taylor, 529 U.S. 420, 434-35 (2000) (opening clause of sec. 2254(e)(2) does not apply where claim was undeveloped in state court because prosecution concealed facts); Burris v. Parke, 116 F.3d 256, 258-59 (7th Cir. 1997) ("To be attributable to a 'failure' under federal law the deficiency in the record must reflect something the petitioner did or omitted. . . . [W]e think that the word 'fail' cannot bear a strict-liability reading, under which a federal court would disregard the reason for the shortcomings of the record.").

III.  Conclusion

   Accordingly, the judgment of the district court is VACATED, and the case is REMANDED for further proceedings consistent with this opinion.

FOOTNOTES

/1 After he was released on bond on the cocaine charge, Wells was arrested on new charges of burglary and possession of stolen property. The six-year sentence he received was for those new charges, both Class C felonies; the cocaine charge, a Class A felony, was dismissed. Wells testified in his May 1996 deposition that Hoefling was the prosecuting attorney at his sentencing hearing.

/2 The trial court did not issue a written decision regarding Newell's successive post-conviction petition. This case therefore does not fall within the ambit of Ylst v. Nunnemaker, 501 U.S. 797 (1991), in which the Supreme Court held that, if there is a reasoned decision by a lower state court clearly denying a petition on procedural grounds, a subsequent ambiguous order of affirmance by the state supreme court will not lift the procedural bar.