In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 24-1894

JOHN A. HAWKINS,

*Petitioner-Appellant*,

*v.*

MARK SEVIER,

*Respondent-Appellee.*

———————————

Appeal from the United States District Court for
the Southern District of Indiana, Terre Haute Division.
No. 2:22-cv-00550-JRS-MKK — **James R. Sweeney II,** *Chief Judge.*

———————————

ARGUED FEBRUARY 24, 2026 — DECIDED MARCH 16, 2026

———————————

Before EASTERBROOK, RIPPLE, and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. John A. Hawkins is an Indiana prisoner serving a 65-year sentence for murder. While incarcerated, he attacked and seriously injured a correctional officer. The Indiana Department of Correction responded by depriving him of nearly 19 years of good time credits. Hawkins, who prefers the last name Hawkins-El, collaterally attacked this sanction by invoking 28 U.S.C. § 2254. The district court

denied his habeas petition and dismissed the action with prejudice. Seeing no error, we affirm.

**I**

A

In 1997 Hawkins-El stopped his car next to two people walking on the streets of Indianapolis. He pulled out a shotgun and fatally shot one of them multiple times in the neck and chest. An Indiana jury convicted him of murder, and the trial court sentenced him to the maximum term of 65 years' imprisonment. See *Hawkins v. State*, 748 N.E.2d 362, 363 (Ind. 2001).

About four years ago, in April 2022, Hawkins-El was serving that sentence in the Miami Correctional Facility in Indiana. One morning he approached two correctional officers, Sergeant D. Betzner and Officer T. Conley, as they were removing inmate-constructed curtains from prison cells. He asked them why they had taken his curtain, and the officers responded by explaining that inmates were not allowed to hang curtains. Hawkins-El complained that the officials had it out for him, but they assured him that was not true, pointing to a large bag full of curtains collected from other inmates.

Hawkins-El then attacked Sergeant Betzner. He landed a forceful blow on the left side of the sergeant's face, causing blood to obscure his vision. Sergeant Betzner responded by struggling to defend himself, only for Hawkins-El to hit him twice more on the head and shove him against the wall, injuring his left shoulder. Sergeant Betzner started seeing double yet managed to pepper spray Hawkins-El before hitting him with the spray can. Hawkins-El then ran to the mop closet to wash off the pepper spray, and a case worker entered the area

and restrained him. Sergeant Betzner's injuries required outside medical treatment.

Sergeant Betzner described the incident in a conduct report that ultimately charged Hawkins-El with Indiana Department of Correction Offense A-117, "Committing battery against a staff person, volunteer, independent contractor, or visitor." A hearing officer found Hawkins-El guilty after considering the staff reports and evidence from witnesses.

The question then became what sanction to impose. As a maximum allowable sanction, the Department of Correction's Disciplinary Code for Adult Offenders generally permitted officials to deprive inmates of six or twelve months of their good time credits depending on the circumstances. But it also authorized enhanced punishment:

> If any adult offender is found guilty of a violation of offense code A-117 … , and the offensive act *results* in bodily injury being caused to the staff person, volunteer, visitor, or contractor, the offender may receive, in addition to the other sanctions listed above, a loss of the entire balance of the offender's accumulated earned credit time.

The hearing officer imposed the enhancement, depriving Hawkins-El of all earned good time credits, which tallied nearly 19 years. The hearing report explained that the sanction was appropriate because Hawkins-El's attack resulted in "SBI [serious bodily injury] causing extreme pain." The hearing officer also checked boxes indicating that he considered the seriousness of the offense, Hawkins- El's demeanor during the hearing, and the degree to which the conduct

disrupted and endangered security within the Miami Correctional Facility. Hawkins-El administratively appealed to no avail.

B

Hawkins-El then turned to federal court. In November 2022, he filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He raised several due process claims challenging the hearing officer's impartiality and procedures, another alleging that no evidence supported finding that he seriously injured Sergeant Betzner, and an Eighth Amendment claim describing his sanction as grossly disproportionate to the offense of battery.

The district court appointed counsel and directed Hawkins-El to file an amended petition. In November 2023, he filed a "Brief in Support of His Amended Petition for Writ of Habeas Corpus." The district court construed this filing as an amended petition. The filing never mentioned his due process claim challenging whether any evidence supported finding that he caused a serious bodily injury. And it supported his Eighth Amendment claim with very few citations to legal authorities.

The district court denied the petition and dismissed Hawkins-El's action with prejudice. It concluded that none of his due process claims alleging bias or procedural error warranted relief. The district court did not address the due process claim that no evidence supported finding that he seriously injured Sergeant Betzner, presumably because the November 2023 filing did not mention that claim. Finally, the district court declined to weigh in on the Eighth Amendment

claim because, in its view, Hawkins-El waived it by discussing it only briefly in the November 2023 filing.

Hawkins-El now appeals.

## II

Hawkins-El presses only two points before us. First, he contends that the hearing officer violated due process by finding without any evidence that he seriously injured Sergeant Betzner. Second, he sees the deprivation of the entirety of his good time credits as grossly disproportionate to his underlying offense, in violation of the Eighth Amendment. Indiana insists that he waived these claims by failing to properly raise them in his November 2023 filing. We disagree.

Indiana grounds its waiver contention in the procedural confusion that arose in the district court. Put simply, when the district court appointed counsel, it set a deadline by which to file an amended petition. Hawkins-El then submitted his November 2023 filing on the deadline, and the district court construed it as the petition contemplated in its order appointing counsel. We agree with the State that anyone tracking the district court's docket probably expected the November 2023 filing to be an amended petition. Hawkins-El could have fulfilled those expectations and filed a lawyered petition cleanly presenting all of his claims.

But he instead filed a brief. Indeed, he entitled his November 2023 filing "Petitioner, John Hawkins', Brief in Support of his Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254(b)(1)(B)." And much like a standard brief, the filing included an argument section that marched through claims raised in the original pro se petition. Nowhere did the November 2023 filing purport to be a new petition.

And even if the November 2023 filing were an amended petition, it would not supersede the original habeas petition. It is true that amended habeas petitions generally supersede their predecessors. See *Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204 (7th Cir. 1998); *Newell v. Hanks*, 283 F.3d 827, 834 (7th Cir. 2002). But that only occurs when an amended petition "is complete in itself and does not reference or adopt any portion" of a prior petition. *Kelley*, 135 F.3d at 1205 (cleaned up); see also 3 James Wm. Moore et al., Moore's Federal Practice § 15.17[3] (3d ed. 2026) (same); *Lubin v. Chi. Title & Trust Co.*, 260 F.2d 411, 413 (7th Cir. 1958) (similar); *Braden v. United States*, 817 F.3d 926, 931 (6th Cir. 2016) (holding amended habeas petition filed by a lawyer did not supersede the original habeas petition filed pro se). Here, the November 2023 filing repeatedly referred to and defended Hawkins-El's original habeas petition.

The original petition included both constitutional claims pursued on appeal. We therefore conclude that Hawkins-El did not waive those claims by failing to raise them below. Nor did he "intentional[ly] relinquish[]" them in the November 2023 filing. *Cole Taylor Bank v. Truck Ins. Exch.*, 51 F.3d 736, 739 (7th Cir. 1995). So we proceed to the merits.

### III

Hawkins-El first contends that the hearing officer violated due process by finding without any evidence that he had inflicted a serious bodily injury. Not so in our view.

### A

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Superintendent, Mass.*

*Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). We have described this standard as "lenient," requiring only "a modicum of evidence." *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (cleaned up). "Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.* (cleaned up). We must not "assess the comparative weight of the evidence underlying" the decision but instead ask "whether there is *any* evidence in the record that *could* support the conclusion reached" by the decision-maker. *Id.* (cleaned up).

B

The due process claim fails because the administrative record contains more than enough evidence to find that Hawkins-El inflicted a serious bodily injury causing extreme pain. Sergeant Betzner reported that Hawkins-El hit him in the face and head at least three times; that his wounds were bloody enough to obscure his vision; that the strikes to the head caused him to see double; that Hawkins-El pushed him against a wall forcefully enough to injure his shoulder; that his shoulder injury kept him from defending himself; and that he had to receive medical treatment from an outside facility. These facts all come from the conduct report and satisfy the "some evidence" standard.

Hawkins-El disagrees, contending that the hearing officer failed to support his conclusion with the right type of evidence. He directs us to the Department of Correction's then-operative Disciplinary Code for Adult Offenders, which provided that "[i]n order to take the entire balance of the offender's accumulated earned credit time, if possible, photographs or other documentation of the bodily injury should be

included as evidence to support a Report of Conduct." Hawkins-El then emphasizes that the hearing officer identified no photographic or documentary evidence of Sergeant Betzner's injury beyond the information in the conduct report.

But that provision of the Code did not use mandatory language. It merely stated that hearing officers "should" support their conclusions with certain types of evidence "if possible." Regardless, the Code did not dictate the requirements of due process. See *Boyd v. Owen*, 481 F.3d 520, 524 (7th Cir. 2007) ("The Supreme Court has made clear the requirement of due process is not defined by state rules and regulations, but is an independent determination." (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985))). The Due Process Clause only required the hearing officer to rely on some evidence bearing "sufficient indicia of reliability." *Viens v. Daniels*, 871 F.2d 1328, 1335 (7th Cir. 1989). Sergeant Betzner's conduct report met this standard.

**IV**

Hawkins-El next contends that the deprivation of nearly nineteen years of good time credits for mere battery violates the Eighth Amendment. Here, too, we disagree.

**A**

"The concept of proportionality is central to the Eighth Amendment." *Graham v. Florida*, 560 U.S. 48, 59 (2010). But the Amendment "does not mandate a precise formula applying to all punishment." *Leslie v. Doyle*, 125 F.3d 1132, 1135 (7th Cir. 1997). When it comes to "the proportionality of prison disciplinary measures," courts "must consider the 'circumstances surrounding'" the punishment, including (1) "the circumstances surrounding the offense"; (2) "the prisoner's

disciplinary record"; and (3) "the offense for which he originally was incarcerated." *Madyun v. Franzen*, 704 F.2d 954, 961 (7th Cir. 1983) (quoting *Chapman v. Kleindienst*, 507 F.2d 1246, 1252 (7th Cir. 1974) (per curiam)). These factors allow courts to give due consideration to the "difficulties of operating a detention center." *Florence v. Bd. of Chosen Freeholders of County of Burlington*, 566 U.S. 318, 326 (2012) (citing *Turner v. Safley*, 482 U.S. 78, 84–95 (1987)).

Hawkins-El insists that *Solem v. Helm*, 463 U.S. 277 (1983), implicitly overruled our longstanding approach to assessing the proportionality of prison discipline. In *Solem*, the Supreme Court introduced three factors for deciding whether "a criminal sentence" is "proportionate to the crime for which the defendant has been convicted": "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Id.* at 290, 292; see also *United States v. Syms*, 846 F.3d 230, 236 (7th Cir. 2017) (reaffirming this test as applied to criminal sentencing).

But *Solem* and its progeny address only the proportionality of criminal sentences. See, *e.g.*, *Solem*, 463 U.S. at 284–90; *Harmelin v. Michigan*, 501 U.S. 957, 994–96 (1991); *Lockyear v. Andrade*, 538 U.S. 63, 74 (2003); *Ewing v. California*, 538 U.S. 11, 28 (2003) (plurality opinion). They say nothing inconsistent with our method of assessing the proportionality of prison discipline.

We have continued to rely on our prison-discipline cases even after *Solem*. In *Leslie*, the plaintiff claimed that a prison official violated the Eighth Amendment's proportionality principle by confining him in disciplinary segregation for

fifteen days after he did nothing wrong. See 125 F.3d at 1132–35. We rejected his claim because our case law was clear that the "[u]nconstitutional disproportionality of punishment … generally requires punishment far more severe than 15 days in segregation, usually for offenses less dangerous than refusal to submit to a search." *Id.* at 1135 (quoting *Madyun*, 704 F.2d at 961) (citing *Haines v. Kerner*, 492 F.2d 937, 942 (7th Cir. 1974) (per curiam)). We never contemplated that *Solem* displaced our precedents.

Applying *Solem* to prison discipline would also create odd results. Consider this very case. Hawkins-El encourages us to compare his deprivation of nearly 19 years of good time credits to the six-year criminal sentence he allegedly would receive for the same underlying battery he committed against Sergeant Betzner. But that comparison undervalues how important "maintaining institutional security and preserving internal order and discipline" are "in the prison setting." *Gevas v. McLaughlin*, 798 F.3d 475, 484 (7th Cir. 2015) (cleaned up).

A simple example illustrates this point. If a group of prisoners conspired to start a riot in the cafeteria, the federal criminal code would punish them with no more than five years of prison. See 18 U.S.C. § 371. Limiting the deprivation of good time credits to five years, however, could risk too lightly sanctioning and under-deterring this conduct, which poses a grave risk to prison security. We decline to accept that the Eighth Amendment requires parity between criminal sentences and prison discipline given the different purposes and values at stake.

B

Applying our usual test for prison discipline reveals that Hawkins-El's sanction was not "seriously disproportionate" in violation of the Eighth Amendment. *Madyun*, 704 F.2d at 960. All three of our previously enumerated factors favor Indiana. See *id.* at 961. And the totality of the circumstances reinforces that conclusion. See *Chapman*, 507 F.2d at 1252.

*First*, we look at the "circumstances surrounding the offense." *Madyun*, 704 F.2d at 961. Hawkins-El responded to the innocuous removal of a curtain from his cell by brutally attacking Sergeant Betzner. He first hit the sergeant's face so hard that blood obscured his vision. He then escalated his attack, striking Sergeant Betzner in the head twice more before shoving him against a wall forcefully enough to injure his shoulder. Pepper spray could not save Sergeant Betzner, who was seeing double by this point. He escaped only because he somehow managed to land a blow, which allowed just enough time for a case worker to arrive and forcibly restrain Hawkins-El. Because this unprovoked violence threatened the "institutional security" and "internal order" of the prison environment, *Gevas*, 798 F.3d at 484 (cleaned up), the first factor favors Indiana.

We can put the same point a different way. Suppose Hawkins-El committed the same conduct while on parole. We have no doubt the Indiana Parole Board would have the authority to revoke his parole and force him to complete his sentence within the Miami Correctional Facility. The Department of Correction effectively punished Hawkins-El the same way by depriving him of his good time credits. That decision was "perfectly rational." *Love v. Vanihel*, 73 F.4th 439, 453 (7th Cir. 2023) (lead opinion).

*Second*, we inspect Hawkins-El's "disciplinary record." *Madyun*, 704 F.2d at 961. Indiana identifies a document apparently outlining a history of prison disciplinary measures taken against Hawkins-El. We struggle to decipher what information the document conveys. But Hawkins-El does not dispute Indiana's framing, so we will accept it as true. See *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). The fact that Hawkins-El has a disciplinary record at all cuts against him at least to some degree. But the weight of this second factor is unclear given our inability to discern the extent of his past bad behavior.

*Third*, we bear in mind "the offense for which he originally was incarcerated." *Madyun*, 704 F.2d at 961. Hawkins-El committed a murder on the streets of Indianapolis, shooting and killing someone with a shotgun. See *Hawkins*, 748 N.E.2d at 363. His offense demonstrates a capacity for violence and suggests that his attack on Sergeant Betzner could have been even worse. This factor favors Indiana.

In the final analysis, then, "all the facts and circumstances surrounding" the decision to deprive Hawkins-El of nearly 19 years of good time credits confirm that the sanction was not unconstitutionally disproportionate. *Chapman*, 507 F.2d at 1252. The Department of Correction had to decide how to handle the unprovoked, violent battery of a correctional officer by a convicted murderer within a prison. It may have reasonably viewed the deprivation of all of his good time credits as necessary to punish and deter similar future conduct.

For these reasons, we AFFIRM the district court's denial of Hawkins-El's habeas petition and its dismissal of his action with prejudice.